601 So.2d 324 (1992)
Charles I. WHITTINGTON, Plaintiff-Appellant,
v.
RIMCOR, INC. and the Travelers Insurance Company, Defendants-Appellees.
No. 23488-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1992.
Rehearing Denied June 18, 1992.
*325 The Allison Law Firm by William T. Allison, Shreveport, for plaintiff-appellant.
Theus, Grisham, Davis & Leigh by C. Wendell Manning, Shreveport, for defendants-appellees.
Before MARVIN, SEXTON and BROWN, JJ.
MARVIN, Chief Judge.
The claimant's appeal in this worker's compensation action concerns the extent of the employer's obligations to provide rehabilitation services (LRS 23:1226) and to pay the cost of an expert evaluation to determine whether the claimant has a medical condition (temporomandibular joint syndrome) that is causally related to the 1987 accident (§ 1203).
The claimant, Charles Whittington, suffered injuries to his head, neck, back and knees in 1987 when he fell from a scaffold while working as a bricklayer for RIMCOR, Inc. He has since been permanently disabled from returning to heavy manual work.
Whittington's son is engaged in a business that repairs and maintains x-ray equipment. Whittington desires to be retrained to qualify for employment by his son or others as a medical equipment servicing technician, by completing courses in basic electronics at a school in Louisiana and by attending a school in Ohio that offers specialized training in servicing medical equipment. Defendants have refused to pay for the specialized training in Ohio, claiming that the in-state training is all that is required for Whittington to meet the entry-level hiring requirements for servicing medical equipment.
Defendants have also refused to pay for a medical evaluation by an oral surgeon or an orthodontist to determine whether Whittington's headaches are caused by temporomandibular joint syndrome (TMJ). This evaluation for TMJ was first recommended some two years after the accident by Whittington's neurologist and psychiatrist, Dr. Ware, who has been treating Whittington's headaches since the accident.
Defendants claimed the cost of the TMJ evaluation was not related to Whittington's accident because Whittington had been treated for headaches before the accident and the medical reports of the several physicians who treated him extensively after the accident did not mention the possibility of TMJ until Dr. Ware made his recommendation two years after the accident.
The trial court dismissed Whittington's demands, finding that adequate job training was available in Louisiana and that Whittington's TMJ problem, if any, was not related to the work accident. The court found that even if Whittington had prevailed on these claims, the w.c. insurer was not arbitrary or capricious in refusing to pay.
Whittington appeals to challenge each finding, as well as the trial court's denial of his motion to exclude the testimony of defendants' rehabilitation expert, who was retained two weeks before trial.
We reverse in part, affirm in part, and remand.

OBJECTION TO EXPERT TESTIMONY
The parties filed separate pre-trial statements in August, about four months before the December 3, 1990, trial. Among potential witnesses defendants listed "an expert in the field of rehabilitation." Defendants reserved the right to amend their witness list by providing written notice to claimant's counsel at least seven days before trial.
On November 13, 1990, Whittington propounded interrogatories to defendants asking them to identify their expert witnesses. On November 16, Whittington moved for and obtained an order shortening the time for answering the interrogatories from 15 to 10 days because trial was set for December 3. Defendants answered the interrogatories on November 23, identifying Dr. Herbst as their rehabilitation expert. Defendants filed an amended witness list on November 26, seven days before trial.
*326 On November 27, 1990, Whittington filed his motion in limine to preclude Dr. Herbst from testifying at trial because she told Whittington's counsel by phone that she was first contacted by defendants on November 19, two weeks before trial, and that she would not have her report ready or be available to be deposed until November 30, the Friday before the trial was to begin on Monday. The motion was heard on the day of trial and denied. In the meantime, Whittington deposed Dr. Herbst on November 29, the Thursday before trial.
When deposed, Dr. Herbst said she had contacted two medical equipment servicing companies about hiring requirements for technicians but had not contacted any hospitals. Dr. Herbst testified that the two companies required only an associate degree in electronics to hire someone, and would thereafter teach an employee the more specialized work either by on-the-job training or by sending him or her to the Radiological Service Training Institute (RSTI) in Ohio, the school that Whittington desires to attend at defendants' cost.
Dr. Herbst made only a general inquiry about the hiring requirements of the two companies and did not mention Whittington's age, which she knew was 50, or other particulars such as the fact that he was unable to perform heavy manual labor. After the deposition and before trial, Whittington's counsel contacted the two companies and was told that they would either not hire, or would not be willing to train on the job, someone who was 50 years old.
At trial, Dr. Herbst testified about the hiring requirements of the two companies she mentioned in her deposition, and about the similar hiring requirements of several hospitals that she had contacted between the deposition and the trial. Whittington's counsel reurged his motion in limine, saying it was "patently unfair for [defendants] to let me take a deposition two days before trial and then have her go do work after that that totally changes her testimony."
The court again denied the motion, reasoning that Whittington's argument would go to the weight of Dr. Herbst's testimony. Whittington's counsel testified on rebuttal about his conversations with the two companies he contacted.
Whittington argues that his motion in limine should have been granted because "it just simply was not fair" to allow Dr. Herbst to testify when she was hired two weeks before trial, deposed two business days before trial, and continued working on the case after she was deposed. Defendants claim the motion was properly denied because they timely answered Whittington's interrogatories and amended their pre-trial statement, and "opposing counsel was afforded adequate opportunity to depose Dr. Herbst." Defendants note that Whittington did not depose his medical expert, Dr. Ware, to perpetuate his testimony for trial until November 27, 1990, two days before Whittington deposed Dr. Herbst.
On this record, we cannot say that the trial court abused its discretion in allowing Dr. Herbst to testify. Whittington did not ask for the name of defendants' expert until about 2-1/2 weeks before trial. Defendants timely answered Whittington's interrogatories and amended their pre-trial statement to name Dr. Herbst as their expert. Whittington's attorney was allowed to rebut Dr. Herbst's testimony about the hiring requirements of the two companies she mentioned in her deposition.
While defendants perhaps were tardy in retaining Dr. Herbst and notifying Whittington of her identity, the circumstances of this record, taken as a whole, do not allow the conclusion that Whittington was "ambushed" or prejudiced by Dr. Herbst's testimony. See and compare Ulmer v. Baton Rouge Gen. Hospital, 361 So.2d 1238 (La.App. 1st Cir.1978), and Guedon and Associates, Inc. v. Haik, 533 So.2d 1256 (La.App. 4th Cir.1988).

EXTENT OF REHABILITATION OBLIGATION
Whittington, a high school graduate, worked as a bricklayer for 15 years before his injury after earlier working as a painter and a heavy equipment operator. Whittington's fall required him to undergo eight surgeries, four on his back and four *327 on his knees. He has not worked since the accident.
Both Dr. Herbst and Whittington's rehabilitation expert, Dr. Galloway, agreed that Whittington is virtually unemployable without retraining in a new field because of the medical restrictions on his work activities. Because Whittington expressed a strong interest in servicing medical equipment, the experts did not attempt to identify other fields of work for which he may be suited or trained. Both experts considered Whittington capable of learning and performing the work in his desired field, and agreed that he would have to complete courses in electronics to meet preliminary qualification for employment.
Whittington lives in Fairbanks, near Monroe. Two north Louisiana schools, Southern Technical College in Monroe and Ayres Technical College in Shreveport, offer an associate degree in electronics.
Expert opinion differed as to whether Whittington will need more specialized training, in addition to the electronics courses, to be employable. Dr. Galloway opined that the associate degree in electronics would not prepare Whittington for the specific vocation he had chosen, as would the advanced or specialized training at the RSTI school in Ohio. Dr. Galloway knew of no program in Louisiana that offered specialized training.
From her contacts with hospitals and servicing companies in Monroe and Shreveport, Dr. Herbst opined that Whittington would need only the associate degree in electronics to meet the entry-level requirements for hiring, with the more specialized training to be provided by the employer.
Whittington testified that his son owns a medical equipment servicing company in Dallas and has offered him a job
as soon as I finish the school.... I'd have to go back and redo my electronic courses ... [t]hat would take approximately nine months ... [t]hen I'd have to go ... through a RSTI school in Solon, Ohio, and it would take approximately three months, but it would be over a six-month period. I'd go two weeks on and two weeks off to school.
. . . . .
Q. Is the schooling required for you to get that job?
Yes, it is.
At the time of Whittington's 1987 injury, LRS 23:1226 E provided in part:
When it appears that rehabilitation is necessary and desirable to restore the injured employee to suitable gainful employment, the employee shall be entitled to reasonable and proper rehabilitation services for a period not to exceed twenty-six weeks, which period may be extended for an additional period not to exceed twenty-six additional weeks if such extended period is determined to be necessary and proper by the director, or upon his refusal, by the court. However, no employer or insurer shall be precluded from continuing such rehabilitation beyond such period on a voluntary basis.... If rehabilitation requires residence at or near the facility or institution and away from the employee's customary residence, reasonable cost of board, lodging, or travel shall be borne by the employer or insurer. Rehabilitation services shall be performed at facilities within the state when such facilities are available....[1]
The litigants and the trial court focused only on the latter of the emphasized provisions, the place for rehabilitation, and did not address the former, which limits the duration of the rehabilitation services that must be provided at the employer's expense. Both limitations must be considered to evaluate the reasonableness of the rehabilitation services sought by the claimant, on the one hand, and offered or denied by the employer, on the other.
*328 Dr. Herbst contacted the two north Louisiana schools that offer the associate degree in electronics, one of which is near to Whittington's home. Dr. Herbst testified that the Ayres (Shreveport) program takes ten months to complete, and the STC (Monroe) program takes two years to complete, although both programs are comparable in content.
Whittington testified that the electronics coursework he needs to prepare him for attending RSTI "would take approximately nine months." Dr. Galloway's report, recommending that Whittington attend RSTI, states:
Before he would be permitted to enroll at the RSTI, he would need to enroll at the Southern Technical College of Monroe, Louisiana, and take some algebra and electronic courses. This would take approximately three quarters or nine months.
It is unclear from this record whether Dr. Galloway obtained this information only from Whittington, who had investigated the RSTI program before he saw Dr. Galloway, or whether Dr. Galloway independently verified the information with RSTI. In the light of Dr. Herbst's testimony that the associate degree program at Southern Technical College takes two years, it appears that Whittington desires to complete only a portion of his training at STC, without actually obtaining the associate degree there, before applying for admission to RSTI.
In any event, it appears that at least nine months of training in Louisiana is a prerequisite for Whittington to attend RSTI in Ohio, but this nine-month training in Louisiana will not be enough for Whittington to earn the associate degree in electronics, which is required for him to be at least marginally employable in his new field.
A further complication is that the RSTI training is offered in six two-week sessions, with two weeks off between each session, for a total of three months of coursework over a six-month period. Each session apparently deals with different medical equipment. Whittington's primary interest appears to be in servicing x-ray equipment. The record suggests, but does not clearly show, the possibility that Whittington could attend some, but not all, of the RSTI sessions to obtain specialized training for the types of equipment that he is most likely to be called upon to service.
Each party has approached Whittington's claim for out-of-state rehabilitation in an all-or-nothing fashion, here and below. Whittington claims defendants must pay for the entire RSTI training program, in addition to the nine months of coursework at STC in Monroe. Defendants contend that they are not liable for any out-of-state training. The trial court's finding that adequate training is available in Louisiana did not take into account the time limitation that applies to the employer's obligation to provide reasonable and proper rehabilitation services under § 1226 E.
This record, in its present state, does not allow us to meaningfully review the trial court's denial of Whittington's claims for the out-of-state job training and for attorney fees for defendants' failure to pay for the out-of-state training.[2]
We shall reverse in that respect and remand to allow the litigants and the trial court to readdress the rehabilitation claims consistently with this opinion and in the light of § 1226 E in its entirety, and to introduce additional evidence which may be necessary to resolve the issue.

MEDICAL EVALUATION
Whittington contends the trial court erred in denying his claim for the cost of a *329 medical evaluation for TMJ, which his neurologist and psychiatrist, Dr. Ware, recommended two years after the accident to determine whether Whittington has TMJ which may be causing the headaches that Whittington has reported to his various doctors since his fall. Whittington emphasizes that he is not asking defendants to pay for TMJ treatment at this point, but only for an evaluation by a medical specialist to determine whether he has TMJ and to express an opinion whether the TMJ is related to the work accident.
The trial court denied the claim based on its finding that "any TMJ problem which [Whittington] may suffer from is not related to the [work] accident." This finding was not based on any direct medical evidence on the causation issue, but on the court's inference of no causal connection from Whittington's detailed medical records, some of which referred to his having been treated for headaches before the fall.
These records show that Whittington had last been treated for headaches in 1984, some three years before the fall, which caused a concussion, and that none of the doctors who treated him after the fall mentioned or sought to rule out the possibility of TMJ as the cause of the headaches he reported after the accident until Dr. Ware recommended such an evaluation. When Dr. Ware was deposed in November 1990, shortly before trial, he continued to suggest the possibility of TMJ syndrome as the cause of the headaches, which Dr. Ware said had become localized in 1989.
The trial court's conclusion that there was no causal connection between Whittington's accident and his "TMJ problem, if any" cannot reasonably be drawn from the evidence in this record. This record simply does not allow any conclusion whether or not Whittington has TMJ syndrome which may or may not be related to the accident.
In order to recover medical expenses under § 1203, the claimant must prove that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Butts v. Insurance Co. of North America, 352 So.2d 745 (La.App.3d Cir.1977) writ denied; Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App.2d Cir.1991). The employer is not obligated to pay for medical evaluations undertaken solely for the purpose of obtaining an opinion that does not affect the treatment of a claimant. For instance, in Butts, supra, the expense of a neurologist's opinion that was sought by an orthopedist was disallowed because it was not shown that the neurologist's opinion resulted in, or affected, treatment by either doctor.
In Charles v. Aetna Cas. and Sur. Co., 525 So.2d 1272 (La.App.3d Cir.1988), writ denied, an orthopedist sought an opinion of a gastroenterologist whether the claimant's lower back pain was caused by inflammatory bowel disease. After ruling out inflammatory bowel disease, the gastroenterologist diagnosed and treated the claimant for a spastic colon, which was related to his work injury, and for gastric and duodenal ulcers, which were not related to the work injury. The claimant was allowed to recover the cost of the tests rendered by the gastroenterologist, as well as the costs of the gastroenterological treatment, which were not itemized to distinguish between the spastic colon treatment (related to the work injury) and the ulcer treatment (unrelated to the work injury).
A physician who is treating a w.c. claimant may seek whatever consultations are medically necessary (§ 1203 A) to determine the claimant's course of treatment for the effect of the injuries received in the work accident. Robinson v. State Farm Fire & Cas. Ins. Co., 404 So.2d 306 (La. App.3d Cir.1981), writ denied.
Dr. Ware has been treating Whittington's headaches medically for several years since the work accident. Defendants have apparently paid the doctor and drug bills related to this treatment. Whittington continued to complain of headaches at trial. While Dr. Ware's recommendation suggests only the "possibility" of TMJ syndrome, it is obvious that he desires a definitive opinion so as to determine the course of his treatment of Whittington's headaches. In this respect, the TMJ evaluation is related to Dr. Ware's treatment. Robinson, *330 supra. Nothing in this record contradicts Dr. Ware's implied opinion that whether or not Whittington has TMJ syndrome will affect his future treatment of Whittington's headaches which relate to his head injury in the accident.
The record, however, does not allow an opinion as to whether TMJ, if found, is causally related to the 1987 accident or whether the expense of treating TMJ is a statutory obligation of defendants.
We nonetheless affirm the judgment insofar as it denies penalties and attorney fees for the insurer's refusal to pay the cost of the TMJ evaluation. See fn. 2, supra, with respect to the claim for penalties. Attorney fees are not owed because nothing in the record suggests that Whittington probably has TMJ syndrome which is causally related to the 1987 accident or that the insurer was arbitrary and capricious in refusing to honor its statutory obligation.

DECREE
We affirm that part of the trial court's judgment which denies penalties on the claims for rehabilitation services and medical expenses, and which denies attorney fees on the medical expense claim. We otherwise reverse the judgment relating to medical expenses and rehabilitation services and render judgment decreeing that the insurer is statutorily obligated to pay the reasonable expense of a TMJ evaluation by a medical specialist and resulting opinion to Dr. Ware to aid his treatment of claimant's headaches. We remand for further proceedings in accordance with this opinion. Costs of this appeal shall be assessed by the trial court in its final judgment after remand.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] Section 1226 E was amended in 1988 to change the reference to "the director or ... the court" to "the hearing officer," and again in 1989 to substitute the term "retraining program" for the terms "rehabilitation" and "rehabilitation services." These amendments did not otherwise change § 1226 E. We quote and apply the provisions that were in effect when Whittington was injured.
[2] Whittington also claimed penalties, which the trial court found were not recoverable as a matter of law because § 1201, as amended in 1983, allows penalties only for failure to timely pay weekly "installments of compensation." Whittington's weekly benefits have been timely paid. Compare § 1201.2, which allows attorney fees for arbitrary and capricious failure to pay "any claim due under this Chapter." The distinction between the respective provisions was recognized in Dubois v. Diamond M Co., 559 So.2d 777 (La.App.3d Cir. 1990), writ denied. The claimant there was allowed to recover attorney fees, but not penalties, for the insurer's failure to pay medical expenses.

Whittington does not complain of the trial court's ruling on the penalty issue with respect to either the rehabilitation or the medical expense claim.