620 So.2d 277 (1993)
Frank BAILEY
v.
SMELSER OIL & GAS, INC., et al.
No. 93-C-0028.
Supreme Court of Louisiana.
July 1, 1993.
Rehearing Not Considered July 26, 1993.
Robert M. Hanna, Shreveport, for applicant.
James E. Patton, II, Ramsey L. Ogg, Davenport, Files & Kelly, Monroe, for respondent.
HALL, Justice.[*]
In this worker's compensation case, we initially granted certiorari to determine if the court of appeal had properly applied the correct standard of review to the hearing officer's factual findings. After careful review of the record, we conclude, however, that the primary issues in this case are (1) whether plaintiff is entitled to medical services to be paid by defendants, and (2) whether defendants' refusal to pay for such services resulted in plaintiff's inability to prove disability under LSA-23:1221. The trial court found plaintiff was disabled and entitled to benefits and medical services. The court of appeal reversed. We set aside both judgments and remand the case to the hearing officer for entry of appropriate orders requiring defendants to pay for a complete neurological and orthopedic exam and any necessary treatment, and thereafter for a hearing and determination of disability and entitlement to penalties and attorney's fees.

*278 I.
Frank Bailey was injured in an accident involving an 18-wheeler gasoline truck he was driving on February 7, 1990, while in the course and scope of his employment with Smelser Oil & Gas, Inc. The employer's worker's compensation insurer, Highlands Insurance Company, not disputing that the plaintiff had suffered a compensable injury, paid worker's compensation benefits in the amount of $276.00 per week commencing February 17, 1990.
Following the accident, plaintiff was referred by defendants to Dr. Clyde Elliot complaining of headaches, neck and back pain. The doctor's initial diagnosis was muscle spasms and whiplash, severe enough for admittance to Glenwood Regional Medical Center in West Monroe. Dr. Elliot found it necessary to refer plaintiff to Dr. Myron Bailey, Jr., an orthopedist. Dr. Bailey's initial visit with plaintiff occurred on February 10, 1990, while plaintiff was still hospitalized. Dr. Bailey ordered MRI's, and on February 16, after negative MRI results and treatment for his injuries, plaintiff was discharged from the hospital. At the time of discharge, Dr. Bailey noted that he expected the plaintiff to be able to return to work in about three months.
After discharge from the hospital, plaintiff saw Dr. Bailey in his office on four separate occasions still complaining of headaches, neck pain and back pain. During these visits, Dr. Bailey began to think that plaintiff was exaggerating his condition and recommended that he have a psychological consultation. Plaintiff did not keep appointments made for him with a psychologist. The last visit to Dr. Bailey occurred on May 31, 1990, at which time Dr. Bailey concluded that the origin of the symptoms seemed to be "supratentorial," apparently meaning psychological or exaggerated. In a letter dated July 26, 1990, to the employer's worker's compensation insurer and later in a verified report that was introduced into evidence at trial, Dr. Bailey concluded that if he had to give an opinion regarding disability, plaintiff was capable of returning to work given there were minimal objective findings to explain his subjective complaints. Based upon the letter, defendants suspended worker's compensation benefits as of August 3, 1990.
During treatment, Dr. Bailey found that a neurological exam was indicated and he attempted to find a neurologist in Shreveport or Monroe that would accept plaintiff, but was unable to locate a doctor that would take a worker's compensation patient. Therefore, as he explained to defendants in the same July 26 letter that concluded plaintiff could return to work, he had referred plaintiff to Dr. Ingram, a Jackson, Mississippi neurologist. He noted that referral to out-of-state doctors had been necessary in the past in worker's compensation cases. Plaintiff lives in Delhi, Louisiana and the distance from his home to Jackson was shorter than the distance from his home to Shreveport. On May 29, 1991, Dr. Ingram examined plaintiff and concluded that he suffered from post-traumatic headaches and recommended tricyclic antidepressants. The doctor wanted to see plaintiff in four weeks for a follow-up. Relying on LSA-R.S. 23:1203(A)[1], defendants refused to pay for Dr. Ingram's services solely because he was an out-of-state physician, and because of defendants' failure to pay, plaintiff did not return for the recommended treatment.
Discouraged about the inability of any of his current doctors to relieve his pain, *279 plaintiff went to see Dr. Daniel Dare, an orthopedist in Vicksburg, Mississippi, which is closer to plaintiff's home than Monroe. Dr. Dare examined plaintiff on August 3, 1990. His exam revealed that plaintiff only had 70% of expected normal range of motion in his cervical spine and some tenderness and tingling in his back. He diagnosed severe cervical lumbar strain and recommended repeat MRI's, electrical studies and a return visit in two weeks. Dr. Dare did not treat plaintiff, as defendants again refused to pay for his services since he was an out-of-state physician. Dr. Dare made no finding with regard to disability.
In October 1990, plaintiff filed a Disputed Claim For Compensation with the Office of Worker's Compensation Administration listing his dispute as "[e]mployee has continuing disability but company says he has fully recovered." After this claim was filed, defendants agreed to pay for plaintiff to have a neurological exam and treatment in Louisiana. The plaintiff saw Dr. Juanita McBeath, a Shreveport physician who specializes in head and neck pain. Dr. McBeath only interviewed plaintiff and did not examine or treat him. Based on this interview, she diagnosed plaintiff as suffering from post-concussion syndrome with post-traumatic headaches. Her recommended treatment consisted of a short hospitalization in Shreveport during which time she was confident she could treat the headaches and further alleviate any other pain. She also wanted to repeat the initial MRI's and x-rays. The record indicates that even though defendants agreed to the visit, they wrote to Dr. McBeath questioning her recommendation for the hospital stay and repetition of the diagnostic tests. Plaintiff never received the recommended treatment from Dr. McBeath.
The hearing officer initially entered an order in April 1991 after a status conference allowing plaintiff to be treated by Dr. McBeath at defendants' cost, including tests that she believed needed to be performed. The order also included a resumption of compensation payments. This order was eventually vacated in June 1991 by the hearing officer as a result of defendants' complaints that such an order could not be entered without a hearing or trial.
A trial was held on September 5, 1991, at which time the hearing officer entered a judgment in favor of plaintiff finding that he was still disabled and ordered compensation benefits be reinstated retroactive to August 3, 1990. The defendants were also ordered to pay all medical expenses, even those that were incurred outside the state. Finally, the hearing officer found defendants were arbitrary and capricious in denying payment and awarded attorney's fees.
On defendants' suspensive appeal, the court of appeal reversed, 609 So.2d 1059 (La.App. 2d Cir.1992), finding the hearing officer was clearly wrong in determining plaintiff was disabled since there was insufficient medical evidence in the record to support that determination. The court also found that the search conducted by Dr. Bailey to find a neurologist in Louisiana was inadequate and, therefore, defendants were not liable for the medical expenses incurred outside the state. Finally, the court of appeal refused to authorize the tests that Dr. McBeath requested on the basis they were not shown to be necessary since similar tests had been conducted previously by Dr. Bailey.
We granted plaintiff's application for writs, 613 So.2d 960 (La.1993).

II.
A plaintiff who seeks worker's compensation benefits on the basis he is temporarily totally disabled bears the burden of proving such disability by clear and convincing evidence. LSA-R.S. 23:1221(1)(c)[2]. While the worker's compensation *280 laws are to be construed liberally in favor of the claimant, that interpretation cannot lessen the plaintiff's burden. Prim v. City of Shreveport, 297 So.2d 421 (La. 1974). Disability can be proven by medical and lay testimony. The trial court must weigh all the evidence, medical and lay, in order to determine if the plaintiff has met his burden. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980). This factual finding should be given great weight and should not be overturned absent manifest error. Prim, supra; Johnson v. Ins. Co. of N. America, 454 So.2d 1113 (La.1984). See, also, Thomas v. Highlands Insurance Company, 617 So.2d 877 (1993).
The employer or his insurer must provide all necessary medical care and treatment. This medical care and treatment is to be provided in the state when it is available. LSA-R.S. 23:1203(A). The employee is allowed to choose a doctor of his choice within each area of practice or specialty and after that choice is made, the claimant cannot switch without the employer's or his insurer's permission. LSA-23:1121(B)[3]. "A physician who is treating a w.c. claimant may seek whatever consultations are medically necessary (§ 1203A) to determine the claimant's course of treatment for the effect of the injuries received in the work accident." Whittington v. Rimcor, Inc., 601 So.2d 324, 329 (La.App. 2d Cir. 1992), writ denied 605 So.2d 1366 (La.1992); Robinson v. State Farm Fire & Cas. Ins. Co., 404 So.2d 306 (La.App. 3d Cir.1981), writ denied 409 So.2d 637 (La.1981).
The employer or insurer is liable for statutory penalties for withholding benefits without evidence to "reasonably controvert" the employees right to compensation and medical benefits. LSA-R.S. 23:1201. Additionally, attorney's fees are recoverable if the employer or insurer acted arbitrarily, capriciously or without probable cause in refusing to pay or terminating benefits. LSA-R.S. 23:1201.2.

III.
The court of appeal was correct in finding that plaintiff failed to prove by clear and convincing evidence that he was temporarily totally disabled at the time of trial. Plaintiff's own testimony that his continuing headaches and back pain make it impossible for him to drive a truck falls short of constituting clear and convincing evidence of disability. Weighing against plaintiff's testimony is the opinion of Dr. Bailey that he could go back to work, plaintiff's refusal to see a psychologist as recommended by Dr. Bailey, and the fact that plaintiff had not seen any doctor for eight months prior to trial. However, plaintiff's ability to present medical evidence to carry his burden of proof and refute the evidence against his claim was stymied by defendants' arbitrary refusal to pay for medical examinations and treatment as required by law. See, LSA-R.S. 23:1203.
Dr. Bailey, the orthopedic specialist to whom plaintiff was referred by defendant employer's doctor, referred plaintiff to Dr. Ingram, a neurologist in Jackson, Mississippi, after determining that a neurologist who would take this worker's compensation claimant was not available in North Louisiana. It is not clear whether the defendants refused to pay for the visit to Dr. Ingram, but it is clear that defendants refused to pay for the treatment recommended by Dr. Ingram. Contrary to the conclusion of the court of appeal, plaintiff was entitled to this treatment from this doctor under LSA-R.S. 23:1203. The referral to a Mississippi doctor was entirely reasonable since no neurologist was available in North Louisiana that would treat plaintiff at that time.
*281 After the arbitrary refusal of the defendants to pay for evaluation and treatment by Dr. Ingram, plaintiff sought treatment by Dr. Dare in Vicksburg, Mississippi, just a short distance from his home near the Mississippi-Louisiana line. Regardless of whether defendants should have paid for this treatment, defendants should have given consideration to the orthopedic doctor's recommendation of the need for further testing.
After the disputed claim was filed with the Office of Worker's Compensation Administration, defendants apparently agreed to pay for plaintiff's interview by Dr. McBeath, a Shreveport neurologist, but then refused to pay for treatment recommended by her. This refusal was arbitrary, not being based on a contrary medical opinion or advice, but simply on an adjuster's evaluation of the claim.
This case was prematurely tried on the issue of disability prior to completion of reasonable medical examinations, evaluation and treatment of the plaintiff. The hearing officer should have ordered the defendants to pay for such evaluation and treatment before proceeding with the trial on the merits.
Neither Dr. Ingram, Dr. Dare, or Dr. McBeath expressed an opinion as to whether plaintiff was disabled from working as a truck driver or in any other gainful occupation as a result of the accident. However, each was of the opinion plaintiff should have further evaluation and treatment, as was Dr. Bailey when he referred plaintiff to Dr. Ingram. Obviously, the doctors felt unable to express an opinion as to disability without further evaluation and treatment which defendants refused to authorize and pay for. Plaintiff established his entitlement to further medical evaluation and treatment which defendants were required to provide under the statute. Defendants' failure to furnish the required medical evaluations and treatment prevented obtaining of medical evidence necessary to establish whether or not plaintiff is disabled and entitled to weekly benefits.
Thus, the judgments of both the hearing officer and the court of appeal are reversed and set aside. The case is remanded to the hearing officer for entry of appropriate orders requiring defendants to pay for further evaluations and treatment as recommended by Dr. McBeath or another neurologist of plaintiff's choice if Dr. McBeath's services are no longer available, and for further evaluation by an orthopedic specialist of plaintiff's choice, or, alternatively or in addition thereto, for such other medical evaluation and treatment as determined necessary by the hearing officer, and thereafter for trial and determination of the issue of plaintiff's disability and entitlement to penalties and attorney's fees.
REVERSED AND REMANDED.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Ortique, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] LSA-R.S. 23:1203(A) provides:

In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. All such care, services, and treatment shall be performed at facilities within the state when available. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. [Emphasis added].
[2] LSA-R.S. 23:1221(1)(c) states in part:

... compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self employment.
[3] LSA-R.S. 23:1121(B) provides:

The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker's compensation carrier for a change of treating within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.