1 iNORRIS, Judge.
Davison Transport (“Davison”) and its worker’s compensation insurer, Commercial Union, appeal an adverse judgment ordering them to reimburse Willie Baker’s out-of-pocket payments for past medical treatment by Dr. Cenac and provide letters of guarantee to insure additional medical treatment, and reinstating his temporary total disability benefits. For the following reasons, we affirm the judgment in part and reverse in part.
FACTS
Willie Baker, a truck driver for Davison Transport in Ruston, was injured on October 27, 1990 around 11:45 p.m. when he arrived at Erco Chemical Company in Springhill. He attempted to fix a leak in the truck’s braking system, slipped and fell about five to six feet, striking his elbow on the truck frame and jamming his neck and shoulder. He reported the accident to the safety director at the Ruston terminal, Greg Gossler. Mr. Gossler sent Baker to Dr. James Finley, an orthopedic surgeon at the Green Clinic in Ruston.
Dr. Finley testified by deposition, introduced into evidence at the hearing, that he examined Baker on October 30; x-rays revealed nothing abnormal. According to Dr. Finley, Baker complained at this time only of pain in his left elbow. Dr. Finley reported that it was not until his fourth visit in late November that Baker complained of pain in his shoulder and neck, radiating down his left arm into the elbow. Dr. Finley ordered additional x-rays and an MRI of the neck. The MRI showed bulging discs; these findings, in Dr. Finley’s opinion, did not account for the radicular pain, normally resulting from nerve root impingement. Finley Dep., p. 8. By December 1990, Dr. Finley believed that Baker was suffering from sprain or strain that would eventually heal with time. He sent Baker for physical therapy, but as of January 1991, he still complained of pain with little or no overall improvement. In January, Dr. Finley stated that if the CT scan he ordered showed nothing, Baker would have to get a second opinion. Dr. Finley never identified the source of Baker’s pain. Dr. Finley learned that Baker was seeing another doctor, and sent a letter to Vicki Cary, the claims manager for Davison *280 Insurance working in 12conjunction with Commercial Union Insurance, stating that he had released Baker because he could find nothing objectively wrong with his arm, and in his opinion, Baker could resume all prior activities.
Baker testified that during Dr. Finley’s treatment he became dissatisfied because he “didn’t feel like Finley was doing anything for me.” According to Baker, he phoned Ms. Cary and told her that he wanted to see Dr. Liles, an orthopedic surgeon at the Ortho-paedic Clinic in Monroe. Baker testified that he specifically requested Dr. Liles because “that was the only doctor that I knew anything about that treated this kind of thing, and the way I knew about him was through friends.” R. p. 161. Ms. Cary, however, made an appointment with Dr. Myron Bailey, another orthopedic surgeon at the Clinic. Although Baker had never heard of Dr. Bailey, he went to the scheduled appointment. He testified, “I didn’t know that you could object to seeing a doctor that the insurance company sends you to.” R. p. 178. Baker insisted throughout his testimony that he specifically told Ms. Cary that he wanted to see Dr. Liles.
Ms. Cary testified, on the basis of two handwritten notations she made during conversations with Baker, that she did not document and could not recall him specifically requesting Dr. Liles. She documented a telephone conversation of November 19, 1990 wherein Baker allegedly stated he refused to go back to Dr. Finley, and requested an appointment at the Orthopaedic Clinic in Monroe because it had been recommended by friends. Baker did return to Dr. Finley, however, after this. Ms. Cary also testified that she needed to verify his worker’s compensation with the Clinic so that Commercial Union would pay for his treatment, and Baker said he would have them call her. She did not receive a call from the Clinic.
The second notation of January 1991 was written informally across the bottom of a report from Dr. Finley. It read, “Willie wants an appointment with The Orthopaedic Clinic in Monroe.” Ms. Cary could not recall if she saw him in person that day or took the message by phone. After this conversation, she claims that she made an appointment for him with Dr. Bailey at the West Monroe office, because it was the earliest one available hand Baker had indicated he was uncomfortable. She testified that if Baker had requested Dr. Liles, she believes her standard procedure would have been to write the name down. On cross examination, however, she admitted that she could not “swear” he did not request Dr. Liles, but just hoped she would have written it down. R. p. 192. In response to questions by the hearing officer, Ms. Cary admitted that she did not bring to court any documentation showing that she called Baker to inform him of the appointment with Dr. Bailey. In fact, she did not recall a conversation with Baker about this.
Dr. Bailey did not testify at trial and was not deposed. The following is gleaned from office reports documenting Baker’s treatment. Baker first saw Dr. Bailey in January of 1991. Dr. Bailey ordered an MRI of the elbow, and an EMG/NCS. The EMG was normal, but the MRI showed a “possible cartilaginous, loose body with slight irregularity of the distal end of the humerus or articular surface.” R. p. 11. Dr. Bailey recommended that Baker have an arthrosco-py. Baker had the surgery on March 26, 1991, and in April, began gentle progressive therapy. By May, he had quit therapy and still complained of pain in his neck, shoulder, elbow and forearm. Dr. Bailey’s office notes of May 3, 1991 read, “I am afraid from my standpoint, I am at my limits regarding future management or determination, and suggested that he seek another opinion.” On November 12, 1991, Baker returned to Dr. Bailey and told him his condition had not improved and he had not received worker’s compensation in six months. Baker returned once more on January 21, 1992, and again reported no improvement. Dr. Bailey documented that he suggests Baker return to work or seek another opinion. At some point in this time frame Davison discontinued Baker’s weekly compensation benefits; the exact date is not clear from the record.
Baker consulted an attorney who recommended Dr. Christopher Cenac, an orthopedic surgeon at the Bone and Joint Surgical Clinic in Houma. On April 29, 1992, Dr. *281 Cenac’s objective findings showed diminished grip and sensation in the left hand and diminished pronation of the left wrist. X-rays of the cervical spine showed very early degenerative changes. Dr. Cenac reported that “Baker remains disabled with residual |4from the injury.” R. p. 44. He recommended an MRI of the spine and shoulder, and an EMG/NCS of the left arm. Results of the shoulder MRI were normal, but the cervical studies showed disc protrusion at C5-6, and proximal root pathology. Dr. Ce-nac believed that Baker may have a surgical lesion. He scheduled him for invasive diagnostic procedures to the cervical spine; however, Baker could not pay for these. Defendants refused to pay for any treatment by Dr. Cenac. Baker filed a Disputed Claim for Compensation with the Office of Worker’s Compensation Administration on May 21, 1992. He had not worked since the accident in October 1990.
On September 23, 1992, at the hearing officer’s request and the insurer’s selection, Baker saw Dr. Gordon Mead for an independent medical exam. Dr. Mead found no objective evidence to support either a cervical problem or Baker’s complaints of severe pain.
Trial on the merits was scheduled for June 18, 1993. However, Baker’s counsel submitted a motion to convert the trial date to a rule to show cause why Davison should not pay for Baker’s medical treatment by Dr. Cenac; counsel for Davison agreed to this. Baker also requested the reinstatement of his worker’s compensation benefits, but Davi-son did not agree to this.
The hearing officer rendered judgment on August 31, 1993 in favor of Baker and against Davison Transport and Commercial Union Insurance Company, ordering defendants to reimburse Baker for all out-of-pocket expenses paid by him to Dr. Cenac; to provide letters of guarantee insuring payment to Dr. Cenac for all additional medical treatment needed; and to reinstate compensation and pay past due weekly benefits from April 29, 1992, the date of Baker’s initial exam by Dr. Cenac, through the present. In written reasons for judgment, the hearing officer found that Dr. Cenac was the orthope-die surgeon “selected” by Baker. The hearing officer believed Baker over Ms. Cary, noting that she could not “be sure” she made notes of every conversation and could' not “swear” Baker did not ask to see Dr. Liles.
Davison Transport appealed, asserting that the hearing officer erred in finding first, |5that Baker had selected Dr. Cenac and not Dr. Bailey, and second, in going beyond the limited scope of the hearing and reinstating his weekly compensation benefits.
COSTS OF MEDICAL TREATMENT
Davison argues that the hearing officer committed manifest error in finding that Baker selected Dr. Cenac as his orthopedic surgeon. Davison contends that Baker selected Dr. Bailey when he asked Ms. Cary for an appointment at the Orthopaedic Clinic in Monroe, and allegedly failed to specify a particular doctor. Davison submits that, in the event this court finds Baker did not select Dr. Bailey, it should not have to pay the expenses of a doctor in Houma when orthopedic surgeons in nearer locales are available.
An employee may select one treating physician in any field or specialty, but thereafter must obtain the employer’s or insurer’s consent to switch to another physician in the same field or specialty. La.R.S. 23:1121 B. The employer must furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal. All such care, services and treatment shall be performed at facilities within the state when available. La. R.S. 23:1203 A (emphasis added); Whittington v. Rimcor, Inc., 601 So.2d 324 (La.App. 2d Cir.), writ denied 605 So.2d 1366 (1992). In addition, the employer shall be liable for the actual expenses reasonably incurred by the employee for mileage reasonably and necessarily traveled in order to obtain the services, medicines, and prosthetic devices which the employer must furnish. La.R.S. 23:1203 C. The findings of an administrative hearing officer in a worker’s compensation case are subject to the same standard of review as a district court. Key v. Insurance *282 Co. of N. Amer., 605 So.2d 675 (La.App. 2d Cir.1992). We will not set aside a hearing officer’s factual findings or reasonable inferences unless they are manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The plaintiff and Ms. Cary were the only two witnesses to testify at the hearing. Baker insisted at trial that he told Ms. Cary he wanted to see Dr. Liles at the Orthopaedic Clinic in Monroe. He did not waver on this point. He also explained that he knew about IfjDr. Liles through friends and had never heard of Dr. Bailey or any other doctor at the Clinic. Ms. Cary testified that she could not remember Baker specifying that he wanted to see Dr. Liles at the Clinic. In addition, she testified that she did not document Dr. Liles’s name in notes made during her conversations with Baker. Ms. Cary concluded that Baker must not have specified Dr. Liles, because she “hoped” that she would have noted Dr. Liles’s name as part of her routine business practice had he requested this particular doctor at the Clinic. Ms. Cary, however, admitted on cross examination that she could not “swear” Baker did not specifically request Dr. Liles. Furthermore, the January notation was not documented on a regular conversation sheet, but rather was written across the bottom of a doctor’s report, suggesting that perhaps the note was made in haste.
The hearing officer, recognizing that Ms. Cary was relying heavily on the two handwritten notations, also questioned her. Although Ms. Cary had testified that she documents every conversation she has with a client and maintains the notes in each client’s file, she conceded that she did not recall informing Baker of his appointment with Dr. Bailey and was unsure whether the conversation, if it took place, was ever documented.
Finally, Davison tried to impeach Baker with the following deposition testimony:
Q: Did you give her the name of a doctor you wanted to see?
A: No, I didn’t. I didn’t know any particular doctor with the exception of the doctor that my friends had told me about at The Orthopaedic Clinic here in Monroe, and I wanted to see Dr. Liles. R. p. 174 (emphasis added).
Baker clarified his answer at the hearing, explaining that he did not completely understand the question during the deposition, but was sure he told Ms. Cary that he wanted to see Dr. Liles.
The hearing officer obviously believed Baker’s testimony over that of Ms. Cary. In light of the conflicting evidence and the trial court’s wide discretion to evaluate factual evidence and witnesses’ credibility, we cannot conclude that the hearing officer was clearly wrong to find that Baker actually selected Dr. Cenac as his orthopedic surgeon. According to Baker, he specifically asked to see Dr. Liles, but was not given the opportunity to do so. Merely expressing a desire to see a doctor does not constitute a 17“selection” under R.S. 23:1121 B. Morgan v. New Orleans Cold Storage, 603 So.2d 190 (La.App. 4th Cir.1992). The hearing officer correctly found that Baker was free to, and did thereafter, select Dr. Cenac, the orthopedic surgeon of his choice.
Baker testified that he continued to experience pain, even after treatment by Drs. Finley and Bailey. In fact, he testified at the hearing that he is “in no better condition now than I was in October 1990 when I got hurt.” R. p. 167. Dr. Cenac is the only one who found any objective basis for Baker’s pain. There is no record evidence that Baker exaggerated his claims of pain or was a malingerer. On this record, the hearing officer was not plainly wrong to find Davison responsible for the expenses related to Dr. Cenac’s necessary medical treatment.
Next, Davison contends it should not have to pay expenses associated with Baker’s treatment by a physician in Houma when closer orthopedic surgeons are available. The treatment at issue was performed within the state of Louisiana as required under La.R.S. 23:1203 A. Presumably, Davison is referring to any mileage or travel expenses that Baker may incur. La.R.S. 23:1203 C. However, Baker waived his claim to these expenses, Plaintiffs post trial brief, R. p. 217, and the hearing officer’s judgment did not award them. This argument is without merit.
*283 REINSTATEMENT OF BENEFITS
Davison contends that the hearing officer erred in going beyond the limited scope of the hearing and reinstating Baker’s compensation. Davison argues that, based on plaintiffs letter requesting the hearing, conversations between both counsel and the hearing officer prior to trial, and the transcript of the hearing itself, everyone understood that the hearing was restricted to the sole issue of whether Davison should pay the medical costs associated with Dr. Cenac’s treatment. Davison asserts that the lack of notice and opportunity to defend violated its due process rights.
In á letter addressed to the hearing officer dated April 2, 1993, Baker’s counsel stated, “there is no urgency to rush to Trial on the Merits, since to do so would create an economic burden on Mr. Baker who has been cut off from weekly payments and medical | ^benefits, which would create an unfair legal advantage to the employer which would not be based upon medical knowledge, but upon economic and time limitations.” R. p. 141. The letter specifically requested that the trial date be converted to a hearing on whether Davison should pay for the past costs of examination and further diagnostic tests and operations by Dr. Cenac. The attached motion and order included a request for reinstatement of benefits. R. p. 146. Davison’s attorney received a copy of the letter and unsigned motion, but claims he never received a signed and certified copy. There is no evidence in the record that he was served with the rule. According to counsel for Davi-son, both counsel agreed in a status call to continue the trial date, and hold a rule only on whether Baker had selected Dr. Bailey as his orthopedic surgeon. Accordingly, the hearing officer issued a notice postponing the trial on the merits and setting the hearing for June 18, 1993.
During the hearing, counsel for Davison objected numerous • times to the scope of opposing counsel’s questions. For example, the following colloquy occurred:
Mr. Nelson: Again, let me just pose an objection, Judge. I mean I don’t mean to belabor it, but I thought we were just here to decide whether he made a selection of Dr. Bailey as a physician. I don’t think we need to go into — This kind of stuff is what we’re going to go into, I would assume, at the trial of this matter: the extent of the injury, what his injury was.
Mr. Diaz: And it’s a simple — I’m trying to cut it down. I realize we’re not in trial on the merits, so I’m trying to cut it down as much as I can.
The Court: Okay. I understand what you’re trying to do, and I’m just going to ask you just to try to limit it to the issues, but I do appreciate your giving The Court some background. R. pp. 162-164.
At another point, Mr. Diaz stated, “I can appreciate Counsel’s objection here, but I’m not pursuing the finality that would be pursued at the trial on the merits.” R. p. 167. In fact, the hearing officer herself stated, “[w]e’re here as the result of a motion and order to convert trial date to rule to show cause why medicals should not be paid by employer.” R. p. 153. Although Baker’s counsel addressed issues such as the extent of the injury and the results of treatment by other doctors, he explained to the court that it was merely foundation or background information. It is clear, based upon the transcript of the hearing and post trial briefs, that neither counsel thought past or future compensation benefits | gwere at issue. R. p. 218.
Furthermore, a claimant must prove his temporary total disability by clear and convincing evidence. La.R.S. 23:1221(l)(e); Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 279 (La.1993). A disability determination is a question of fact based on the totality of the evidence, including both lay and expert medical, testimony. Bailey, supra at 280; Polk v. Babineaux’s Plumbing, Inc., 628 So.2d 71 (La.App. 3d Cir.1993). It will not be overturned absent manifest error. Bailey, Polk, supra.
As discussed above, neither party thought that disability was an issue in this hearing. Due to the limited scope of the hearing, no medical experts testified and only limited medical testimony was introduced via deposition. There was also little lay testimony on the extent of Baker’s injury and his *284 ability to work. Additionally, defendants’ refusal to furnish medical treatment with Dr. Cenac made it difficult for Baker to obtain the medical evidence that might perhaps establish his disability. Because the hearing was restricted to the issue of medical expenses, the record does not show by clear and convincing evidence that Baker is entitled to temporary total disability benefits. Thus, the hearing officer ruled on the disability issue prematurely, prior to completion of reasonable medical evaluations and treatment by Dr. Cenac. See Bailey v. Smelser Oil, supra.
Consequently, the judgment is reversed insofar as it provides for reinstatement of temporary total disability benefits and orders payment of past due disability benefits. The case is remanded to the hearing officer for a hearing and determination on Baker’s disability. The judgment, in all other respects, is affirmed. Costs are assessed one-half to the appellees, Davison Transport and Commercial Union, and one-half to the claimant, Willie Baker.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.