SOL GOTHARD, Judge.
Plaintiff, Laura Lee, appeals an adverse judgment from the Office of Workers’ Compensation that denied her request for reinstatement of indemnity benefits, along with related penalties and attorney fees, and dismissed her claim with prejudice at her cost.
The record shows that claimant, who was employed as a bus driver for St. James Parish, sustained a work-related injury to her lower back on July 16, 2001. A disputed claim for workers’ compensation was filed on March 27, 2002. At the time of the accident claimant was earning $8.00 per hour and working a forty-hour week. She received compensation benefits from July 2001 until September of 2002 in the amount of $426.66 every two weeks. The *738 matter came up for a hearing on March 27, 2003 and judgment was rendered on May 9, 2003.
In brief to this court, claimant assigns four errors for our review. She contends she is entitled to temporary total disability or supplemental earnings benefits, additional medical tests and procedures, and an award for penalties and attorney fees for defendant’s arbitrary and capricious termination of benefits.
At the beginning of the hearing, the parties stipulated that the accident on July 16, 2001 was work-related, and that compensation in the correct amount was paid every two weeks from July 18, 2001 until September 3, 2002. A further stipulation was made that Dr. Lucien Miranne is the claimant’s treating ^neurosurgeon and Dr. John Watermeier is her treating orthopedist. Dr. Chad Millet is defendant’s choice of orthopedist.
At the hearing the court heard testimony of claimant, Laura Lee, who stated that she is a forty-six year old mother of three grown children. Mrs. Lee was employed as a bus driver by St. James Parish since 1991. On the day of the accident, Mrs. Lee was dispatched as a bus driver for handicapped citizens. She had to pick up two individuals, who were confined to wheel chairs, from a nursing home. Mrs. Lee was required to push the wheel chair on the bus lift, wheel the person onto the bus and tie the chair down to prevent injury to the handicapped person. One of the individuals was an overweight man. As Mrs. Lee attempted to maneuver the chair in order to get it into position and tie it down, she felt something pull in her back. She experienced pain in her lower back, arms and legs. The next day, when the pain continued, she filed an accident report.
Mrs. Lee saw her personal physician first, who prescribed muscle relaxers and referred her to Dr. Lucien Miranne, a neurosurgeon. Dr. Miranne ordered an MRI for diagnostic purposes, and epidural injections of steroids. Because the pain continued, Dr. Miranne referred Mrs. Lee to Dr. John Watermeier, an orthopedic surgeon.
Mrs. Lee stated that, at the time of trial her main complaint was pain in her legs. She stated that the right leg is worse than the left, and is painful from the center of her back. She also stated that she has pain in both arms, making is difficult to hold anything. She is currently taking Ce-lebrex and Robaxin every day. Mrs. Lee stated that she was released by Dr. Water-meier to light duty. However, her job was not light duty.
She asserted that she attempted to return to her job, but the Parish would not re-hire her. She testified that the Parish gave her a “pink slip” because the Family Medical Leave Act time had expired. She stated that she can no longer perform 1¿her job as a bus driver, because since the accident she cannot sit in the same position for long periods of time and because of the pain in her arms.
Mrs. Lee also testified that she met with a vocational rehabilitation expert about possible jobs, and further that she has sought suitable employment on her own. She applied to the St. James Parish School Board, the Toddler House Daycare Center, a credit union and a bank in the area, but was unable to secure employment. Mrs. Lee also testified that Dr. Watermeier has recommended pain management therapy, which she would be willing to try, if she had the compensation.
On cross-examination Mrs. Lee explained that her job as a bus driver involved driving children to the local Head Start program in the mornings and driving handicapped people in the afternoons. *739 She also stated that normally the handicapped citizens were smaller than she. She also testified that there is nothing taxing about driving the children in the morning, because she is only the driver and there is another person on the bus to care for the children. In the middle of the day, she would pick members of the general public, who are not handicapped, but need to be transported to the hospital or doctor’s offices. She also explained that the bus is a small one with a hydraulic lift, lowered by the touch of a button. Nothing about the use of the lift or the opening or closing of the door is physically taxing.
She admitted that Dr. Chad Millet opined that she could return to her job as bus driver, but asserts she did not find out about that opinion until “later.” She maintained that she was unable to secure employment because prospective employers would not hire her based on the physical restrictions placed on her by the doctors.
She further conceded that the Parish only had to hold her job for twelve weeks under the Family Medical Leave Act, but it was held for her for ten months. She received notice from the Parish that her job was terminated because it was 1 Snecessary to fill her position. She stated that she received her retirement funds from the parish government retirement system, but denied that she requested the disbursement of the funds. She contends that when she was terminated from her employment, she was automatically retired. She acknowledged that she had the option to roll the funds over to a new retirement plan, but could not because she needed the money to survive. Mrs. Lee also verified that at the time she was terminated, she was still receiving workers’ compensation benefits. She stated that she reapplied to the Parish for employment in August 2002.
Allison Roberts, who handled the workers’ compensation claim, testified that when she took over the claim in May of 2002, claimant was being treated by Dr. Miranne. Dr. Millet was the defendant’s doctor who, after a review of medical records including diagnostic tests, reported that Mrs. Lee could return to work as a mini-bus driver for the parish.
Ms. Roberts forwarded Dr. Millet’s report to Dr. Miranne, who responded on July 1, 2002, that he did not disagree with Dr. Millet’s findings and had nothing further to offer Mrs. Lee.
Ms. Roberts contacted the employer and discovered that Mrs. Lee’s job was no longer available because someone had been hired to take her place. Ms. Roberts initiated vocational rehabilitation services in July of 2002, and continued paying benefits through September 3, 2002. On September 3, 2002 those benefits were terminated based on the doctors’ reports that claimant was able to go back to work. However, the vocational rehabilitation services continued.
After the termination of benefits, Ms. Roberts received a report from Dr. John Watermeier which indicated that a “new accident” changed her status to light duty work. The report did not specify the nature of the new accident, and Ms. Roberts understood that light duty included driving a bus, thus benefits were not reinstated.
LOn cross-examination, Ms. Roberts admitted she did not forward a job description of a school or handicapped bus driver to any of the treating physicians. Thus, she did not know if claimant could have returned to the work she described in her testimony. Ms. Roberts again referred to doctors’ reports which indicated claimant could return to work as a bus driver.
Ms. Roberts acknowledged that on November 12, 2002, a report from Dr. Water- *740 meier requests a cervical MRI and a CT scan, and mentions a new injury to the hand. Further, that report returns claimant to total temporary disability status. However, that was not done because the report indicated a “new injury.” Subsequently on January 28, 2003, Ms. Roberts received notification from Dr. Watermeier that the indication of new injury was a dictation error. However, no further benefits were paid, either in the form of compensation to claimant or payment of medical bills.
When questioned on the report made by Dr. Watermeier dated August 28, 2002 which recommends arthroscopic evaluation of the right knee, Ms. Roberts stated that the procedure was not authorized because it was not associated with the 2001 injury. Further the report released claimant to light duty work status.
In the redirect examination, Ms. Roberts explained that she has denied no requested medical treatment. While there is mention of diagnostic tests in Dr. Water-meier’s report, no request for authorization was received. Ms. Roberts explained that her understanding from the doctors’ reports was that claimant had a back injury. She was never informed of a knee injury, nor has she received any request for authorization to perform the arthroscopic evaluation mentioned in Dr. Water-meier’s report.
The court also heard testimony from Brandyn Landry, the rehabilitation counselor assigned to claimant’s case. She testified that an initial interview was conducted to obtain information regarding claimant’s work history, educational 17background and medical history. After a meeting with claimant, Ms. Landry provided training in job-seeking skills for claimant. Claimant related to Ms. Landry that her former position of bus driver for St. James Parish was no longer available and expressed no desire to return to that job. Consequently, Ms. Landry conducted vocational testing and provided claimant with assistance in using the library computer to locate employment opportunities. With Ms. Landry’s help, Claimant developed a resume. Several employment opportunities were identified. Ms. Landry identified several jobs available for claimant such as bank teller, supermarket cashier, customer service representatives, support clerk or collections clerk, and data entry clerk.
Ms. Landry stated that initially claimant was very active in the vocational rehabilitation process. Claimant was primarily interested in a bookmobile driver position with St. James Parish that did not materialize because she had withdrawn her retirement benefits, which precluded her from further employment with the Parish. Claimant did apply for the bank teller position available at Gramercy Federal Credit Union. As time progressed, claimant was not as enthusiastic; but, she did continue to do some job searching.
Ms. Landry explained that she contacted prospective employers to confirm that claimant had applied for the job and to discover the reason she was not hired. None of the employers gave physical limitations as a reason for not offering claimant the available position. Claimant did not follow up on the supermarket cashier job, or on any jobs in Baton Rouge. The last employment opportunity claimant discussed with Ms. Landry was a daycare position in December of 2002. As of that time, claimant was still looking for a light duty job.
The record also contains reports from various doctors, including Dr. Watermeier’s report of November 12, 2002 in which his assessment was “sacroilitis and lumbar disc syndrome, cervical syndrome and trigger finger of the | bright third finger.” The *741 report places claimant on total temporary status until February 18, 2008. It is that report that indicates a new injury was sustained. On November 21, 2002, Dr. Watermeier notified counsel for claimant of the error in dictation that implied the injury was from a new accident. That report also explains that claimant burned her hand as a child and had no problem with it until the work related accident in July of 2001.
The record also contains Dr. Watermeier’s report made after the February 18, 2003 visit. In that report Dr. Watermeier diagnosed claimant with “lumbar disc syndrome, internal derangement right knee with residual symptoms.” The doctor also stated that treatment is prescription medications and discharge to pain management. He further stated that surgery in not recommended, and further diagnostic tests are not needed. Prognosis is fair and employment status is light duty.
As previously stated, claimant assigns four errors for our review. In argument, claimant avers the court committed a legal error in refusing to award benefits based on willful misrepresentation. Accordingly, claimant urges this court to review the record de novo. Because we find claimant’s argument to be without basis, we review the judgment under the manifest error/clearly wrong standard. Support for this position is found in the judgment which states in pertinent part that the court determined claimant did not violate La.R.S. 23:1208.

LAW

To establish a right to receive temporary or permanent disability benefits, a claimant must show by clear and convincing evidence that she is unable to engage in any type of employment. La. R.S. 23:1221(1). To meet this burden, objective medical evidence is required. Greis v. Lake Charles Memorial Hosp., 97-1258 (La.App. 3 Cir. 3/6/98), 709 So.2d 986, writ denied, 98-0937, 98-0938 (La.5/15/98), 719 So.2d 467. The trial court must weigh all the evidence, medical and Islay, in order to determine if the plaintiff has met his burden. This factual finding should be given great weight and should not be overturned absent manifest error. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280 (La.1993).
Claimant makes two arguments regarding error in the trial court’s finding that she did not meet her burden of proof in regard to additional benefits. The first relates to temporary total disability benefits and the second relates to earnings benefits (SEBs) pursuant to La. R.S. 23:1221(3)(a).
We find claimant’s argument regarding the defendant’s failure to pay benefits from November 12, 2002 through February 18, 2003 valid. The record shows that claimant proved, by uncontroverted medical evidence, that she was placed on temporary total disability status as of November 12, 2002 with the introduction of Dr. Watermeier’s records. We are not persuaded by defendant’s argument that, because claimant was working with the rehabilitation expert at the time to find employment, she failed to meet her burden under the above cited law. Therefore, we find the trial court committed manifest error in its finding that claimant did not meet her burden of proof that she is entitled to temporary total disability benefits from November 12, 2002 through February 13, 2003. Thus, we reverse that portion of the judgment.
Claimant also asserts she is entitled to supplemental earnings benefits . (SEBs) pursuant to La. R.S. 23:1221(3)(a). The Louisiana Supreme Court, in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, *742 summarized the law in this area. In Banks, the court explained that the initial burden of proof for an award of SEBs is on the claimant to prove by a preponderance of the evidence that the injury resulted in her inability to earn 90% of her pre-injury earnings. Once that burden is met, it shifts to the employer. In order to defeat the claim, an employer must show that the claimant is physically able to perform a certain job and that the job was available to the claimant in her | mcommunity or reasonable geographic region. Actual job placement is not required. Id., 696 So.2d at 556.
In the instant case we find no manifest error in the finding that claimant did not meet her initial burden of proof that she is unable to earn 90% of her pre-injury earnings. We1 find sufficient support in the record for that finding. Accordingly, we find no merit in this assignment.
In the next assignment, claimant argues the court erred in failing to award penalties and attorney fees. We have reviewed that argument in light of the record before us, but find no abuse of discretion. La. R.S. 23:1201.2 provides that employers are liable for such awards only when the denial or discontinuance of the benefits is arbitrary and capricious. We do not find that the failure to pay temporary total benefits, as described above, rose to the level of arbitrary and capricious. The report that advised the defendant of the classification made by Dr. Watermeier on November 12, 2002 indicated a new injury to the hand and seemed to be unrelated to the accident in question herein. It was not until January 28, 2003, that defendant received the corrected . report. Under these circumstances we cannot find the trial court to be manifestly erroneous or clearly wrong-in its finding that defendant was not arbitrary and capricious.
Finally, claimant argues defendant should be ordered to pay for diagnostic tests ordered by Dr. Watermeier. Given the doctor’s last report, which stated that no surgery or diagnostic tests were needed, we find no merit in this assignment. However, we do note that Dr. Watermeir noted that claimant could benefit from pain management. Because there is no indication in the record that any claim for such treatment has been presented to defendant for authorization, we cannot rule on the failure to pay for the treatment.
For thé foregoing reasons, that portion of the judgment that denied temporary total disability benefits from November 12, 2002 through February 28, ln2003 is reversed, and defendant is hereby ordered to pay claimant accordingly. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.