hYELVERTON, Judge.
Borel injured his neck, shoulders and back on August 10, 1991 while lifting some pipe. On November 3,1993, this court decided that Carol Borel had suffered a compensable accident under the Worker’s Compensation Act while employed by Dynamic Offshore Contractors. Borel v. Dynamic Offshore Contractors, 626 So.2d 565 (La.App. 3d Cir.1993), writ denied, 630 So.2d 801 (La.1994),2 We remanded the case to the hearing officer for further action. After a hearing on the issue of disability on June 16, 1994, the hearing officer found that Borel had not proved by clear and convincing evidence that he was disabled for the period of time necessary to receive indemnity benefits.
Borel now appeals this judgment, claiming that he is entitled to temporary total disability benefits from August 24, 1991, and penalties and attorney’s fees.
Following the accident, Borel was first treated by Dr. Roy Landry. He was referred by Dynamic. Dr. Landry diagnosed Borel with muscle strain noting tenderness of the right rhomboideus and trapezius with muscle spasm. He was given Flexeril and Darvocet and placed on light duty. On August 19, Dr. Landry reexamined Borel noting no spasm but tenderness worse along the lumbar area. Borel had indicated to Dr. Landry that his back was better but after working all day, it hurt all the way down. He was again diagnosed with muscle strain and obesity. Borel was placed on a no-work status for five days. When Borel saw Dr. Landry on August 22, he was better as he had stayed in bed for five days. Dr. Landry said he could return to regular work on August 23. Borel never saw Dr. Landry again.
Borel did not return to work after August 23. On September 5,1991, Borel was laid off from Dynamic.
On September 7, 1991, Borel went to the University Medical Center in Lafayette where he was examined for continuing back problems. Examination revealed tenderness but no spasms. Borel was able to move easily on and off the table. X-rays of the lumbar region revealed no fractures, dislocations or other bony |8pathology. He was diagnosed with acute lumbar strain. He was told that he could perform normal activities as tolerated.
Borel then went to see Dr. John Cobb, an orthopedist, on September 23, 1991. This time he was also complaining of knee pain. Dr. Cobb performed an examination and took x-rays. Borel was noted to have tenderness in the right thoracic paraspinous muscles but no spasm. In the lumbar region, the area of maximum tenderness was the low lumbar. X-rays of the cervical and lumbar spine were *117 normal. He was diagnosed with post-traumatic cervical and lumbar pain syndrome. Dr. Cobb recommended an MRI and placed him on a no-work status. He found that Borel had not reached maximum medical improvement, although he did not expect permanent disability.
On October 31, 1991, Borel was under the care of Dr. Ernest Lisenby, a chiropractor, for cervical sprain/strain and low back syndrome. Dr. Lisenby found Borel to be totally disabled from any gainful employment until further notice.
Borel was next seen for back and shoulder complaints at the Teche Action Clinic on November 21. He was diagnosed with scoliosis. The next day he went to the University Medical Center again where x-rays of the thoracic spine revealed scoliosis. Activities were limited if he still had back pain and the possibility of an MRI was suggested. Borel again visited the University Medical Center on December 12, 1991 complaining of back, neck and shoulder pain. His wife told them that he got stiff when working in the yard. The diagnosis was still scoliosis with lumbar strain and his activities were still limited.
Borel went back to the Teche Action Clinic in January 1992 because he did not feel that medicine which had been prescribed for his pain was working.
UBorel did not see anybody until May 1992. He went to the King Memorial Clinic in New Iberia. He was diagnosed with arthritis of the cervical and thoracic spine and muscle sprain. He returned a week later and was still diagnosed with post traumatic muscle strain. He went back on June 15 still experiencing muscle sprain.
He also went to the University Medical Center on June 15 complaining of back pain. He was told to rest in bed for 3 days. He again went to University Medical Center in July complaining of the same pain symptoms and was diagnosed with mechanical pain.
He did not seek further treatment until March 1993 when he went back to King Memorial Clinic still complaining of lower back ache. The diagnosis was again cervical and back strain. He was referred to University Medical Center where after examination they scheduled him for a CT scan of the cervical and lumbar spine. The CT scan revealed mild midline bulge at C5-6 and bulges from L2-3 through L5-S1. Borel returned to University Medical Center in April to review the CT scan. He was diagnosed with chronic back pain.
The last time he visited a medical facility was in January 1994 complaining of lower back pain radiating to the right leg to the knee. It was recommended that he lose weight and he was placed on normal activities.
Borel also applied for social security benefits and was examined by Dr. John Hum-phries, an orthopedic surgeon, for a disability evaluation in June 1992. He found tenderness in the left trapezius muscle and upper lumbar region. Dr. Humphries opined that Borel could perform light and medium work. He could not find any objective evidence that he could not perform regular work. The mild lumbar ^stiffness would allow heavy work if he did not have a herniated lumbar disc, but felt that the diagnostic workup was incomplete. He did consider him fit for medium duty.
Borel testified that he is still hurting in his neck, back and knees. He felt that he could do real light duty work at the time of the hearing.
Dynamic refused to pay for any benefits or any medical expenses other than Dr. Landry,
DISABILITY
Pursuant to La.R.S. 23:1221(l)(c) Bo-rel had to prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment in order to be entitled to temporary total disability benefits.
While the worker’s compensation laws are to be construed liberally in favor of the claimant, that interpretation cannot lessen the claimant’s burden. Disability can be proven by medical and lay testimony. The trial court must weigh all the evidence, medical and lay, in order to determine if the plaintiff has met his burden. This factual *118 finding should be given great weight and should not be overturned absent manifest error. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993).
La.R.S. art. 23:1224 provides that no compensation shall be paid for the first week after the injury unless the injury continues for six weeks or more. The hearing officer found that the only evidence that Borel was disabled beyond the first week of his injury was his own self-serving testimony, which was not enough to prevail under the clear and convincing standard. However, a review of the record [ (¡indicates that there is medical evidence to indicate that Borel was temporarily totally disabled beyond the day he was released to return to work by Dr. Landry.
Both Drs. Cobb and Lisenby would not have released Borel to return to work as of October 1991. Dr. Cobb could not make a complete diagnosis without further testing, more specifically an MRI. Even when he went to University Medical Center in November 1991, it was suggested that Borel have an MRI. On his visit to University Medical Center in June 1992, he was to rest in bed for three days. Also, in June 1992, Dr. Humphries would have limited his work to light or medium. Furthermore, Dynamic refused to pay for further treatments by Dr. Cobb as required by law and for the testing that Dr. Cobb requested. This made it difficult to determine the full extent of Borel’s injuries.
Under these circumstances, we find that Borel proved by clear and convincing evidence that he was temporarily totally disabled until June 1992 and it was manifest error not to award temporary total benefits from the date of his accident until June 1992.
There is no evidence in the record to indicate that he was disabled past that point. On all subsequent visits to University Medical Center, he was released to normal activities. We find that Borel is entitled to receive the stipulated amount of $246.16 a week from August 10, 1991 to June 18, 1992.
PENALTIES AND ATTORNEY’S FEES
In this case the hearing officer never reached a determination of penalties and attorney’s fees because she found that Borel did not prove he was disabled for the period of time necessary to receive indemnity benefits.
|7The employer or insurer is liable for statutory penalties for withholding benefits without evidence to “reasonably controvert” the employees right to compensation and medical benefits. La.R.S. 23:1201. Additionally, attorney’s fees are recoverable if the employer or insurer acted arbitrarily, capriciously or without probable cause in refusing to pay or terminating benefits. La.R.S. 23:1201.2. Bailey, 620 So.2d at 280. An insurer or an employer is required to make a reasonable effort to ascertain an employee’s exact medical condition before benefits are terminated or denied. Duplechain v. Gulf States Utility Co., 468 So.2d 1386 (La.App. 3d Cir.1985).
Once Dynamic’s insurer, The Gray Insurance Company, received the reports from Dr. Cobb and Dr. Lisenby, it should have conducted a further investigation. For example, it could have paid to have the MRI performed as Dr. Cobb requested and paid for Borel to continue his treatment with Dr. Cobb. Gray also admitted that it denied the MRI. because it felt that an accident had not occurred and that benefits were not owed. Once it received the decision of this court that Borel did suffer a compensable accident, Gray should have conducted a further investigation.
We find that Gray was arbitrary and capricious in its denial of benefits and award penalties and attorney’s fees to Borel in accordance with La.R.S. 23:1201 as it read prior to the 1992 Amendment and 23:1201.2. Penalties are awarded in the amount of 12% of the unpaid benefits. Attorney’s fees are awarded in the amount of $3,500.
JgMEDICAL EXPENSES
Dynamic and Gray answered the appeal claiming that the hearing officer’s awards of $75 for the services of Dr. Lisenby and $210 for Dr. Cobb were in error. They claim that Borel failed to prove that the medical bills reflect charges for necessary treatment of work-related injuries.
*119 The employer or his insurer must provide all necessary medical care and treatment. This medical care and treatment is to be provided in the state when it is available. La.R.S. 23:1208. The employee is allowed to choose a doctor of his choice within each area of practice or specialty. La.R.S. 23:1121.
Borel chose an orthopedist, Dr. Cobb, and a chiropractor, Dr. Lisenby. Both doctors’ records indicate that their treatment of Borel was for the accident that occurred on August 10, 1991. Both doctors felt that Borel suffered problems as a result of this accident. Therefore, this medical treatment was necessary and the hearing officer was correct in awarding the expenses of treatment from these doctors.
For the reasons expressed in this opinion the judgment of the Office of Workers’ Compensation Administration is reversed to award temporary total benefits in the amount of $246.16 a week from August 10, 1991 to June 18, 1992. A 12% penalty of this total amount is also awarded. Attorney’s fees in the amount of $3,500 are awarded to claimant. Additionally, claimant is awarded all interest and costs in accordance with the law.
Costs of this appeal are assessed to Dynamic Offshore Contractors and Gray Insurance Company.
REVERSED IN PART AND RENDERED; AFFIRMED IN PART.