liKNOLL, Judge.
The defendants have appealed an award of worker’s compensation benefits to Kathy G. Arnold as a result of an accident that occurred on August 13, 1991. The hearing officer found that the plaintiff sustained a work-related accident that rendered her temporarily totally disabled. The defendants assert that the hearing officer committed manifest error in finding that a work-related accident occurred, and that the hearing officer applied the incorrect burden of proof in finding plaintiff temporarily totally disabled.
We find the judgment below to be free of manifest error, and that the hearing officer applied the correct burden of proof, and therefore affirm.
FACTS
Kathy Arnold worked as a delivery driver for Lou-Pac Express from June 1991 through November of that year. Her duties included loading, transportation, and delivery of packages to Lou-Pac customers in the Alexandria, Louisiana area. Lou-jPac2 is a small parcel carrier, for packages that weighed less than 100 lbs. Lou-Pac Express *331 is a subsidiary of Cirruscorp, Inc., and both companies are insured for worker’s compensation by the defendant, United States Fidelity and Guaranty Company (U.S.F. & G.).
Lou-Pac Express operated from a loading dock/office located on Highway 71, just south of Alexandria. Lou-Pac used two vehicles in the course of its business. One was a tractor-trailer that was driven by Larry Jones, while the other was a minivan driven by Kathy Arnold. The loading dock at the Lou-Pac facility was level with the bed of the tractor trailer, and Larry Jones could load his vehicle by rolling a cart or dolly into the rear of the trailer. Since the cargo area of the minivan was considerably lower than the loading dock, Ms. Arnold had to load her freight by hand. She would usually place her freight at the edge of the loading dock before climbing down to load the minivan from ground level.
Ms. Arnold testified that on the morning of August 13, 1991, she was alone and loading her freight through the rear door of the minivan by hand. Her freight for the day had been placed at the edge of the platform. She reached for a box that was banded to two small boards and began to slide the box toward her. Although the box slid easily from the platform, it was too heavy for Ms. Arnold to support, and the weight of the box knocked Ms. Arnold into the rear bumper of the minivan. She then fell to the ground, and the box landed on top of her.
Since the weigh bill indicated that the box weighed in excess of 280 lbs., Ms. Arnold complained to her supervisor, Marilyn George. She told Ms. George what had happened and said that she was upset that someone had sent an overweight package through Lou-Pac. Ms. Arnold then loaded the box with the help of Paula Davis, who worked in the same building, and completed her delivery route for the | sday. She testified that although she did not feel injured at first, her back stiffened as the day progressed. When she returned from her route, she told Marilyn George that she was experiencing stiffness in her back. She also told Larry Jones about the incident. No accident report was prepared, and there is evidence that Ms. George had little experience in dealing with employee accidents.
Ms. Arnold continued to work every day, and put in as many as 30 hours per week of overtime for the next few weeks. She did not see a doctor at this time. She stated that although her back pain had gradually increased, she was hopeful that it was not a serious injury. She also said that Lou-Pac was shorthanded at the time, and she was afraid of losing her job if she missed work.
Ms. Arnold’s mother and sister testified that Kathy complained to them on the day of the accident. They also said that they saw Kathy Arnold walking “hunched over.” Larry Jones said that Ms. Arnold complained to him of back problems starting in August, and that he too had seen her “hunched over.” Ms. George, Ms. Arnold’s supervisor, said that Kathy Arnold complained of back problems sometime in July or August.
Lou-Pac ceased its operations at its Alexandria office on November 25, 1991. Ms. Arnold helped load the office furniture and supplies on the last day. The next day, her back “stoved up” and she was unable to get out of bed. There is some evidence that the work performed by Ms. Arnold on the last day of work aggravated her condition.
Nearly a month passed before Ms. Arnold saw a doctor about her back. Dr. Gregory Lord, a general practitioner in Leesville, saw Ms. Arnold on December 31, 1991. At first, Dr. Lord thought Ms. Arnold could be treated conservatively with anti-inflammatory medication. After taking X rays, however, Dr. Lord noticed 14degeneration of a disc and spurring in Ms. Arnold’s lower back. Although Dr. Lord could not confirm that these injuries were a result of the August 13 accident, he said that they were consistent with such an event.
Ms. Arnold also saw Dr. John Weiss, an orthopedic surgeon in Alexandria, on September 25, 1992. His review of her X rays indicated narrowing and spurring at L4-5. Although Dr. Weiss recommended a CT scan for Ms. Arnold, this was postponed for financial reasons.
Ms. Arnold was then involved in a head-on automobile accident. Dr. Weiss testified that *332 although there was temporary aggravation in Ms. Arnold’s spine as a result of the accident, he felt that there was no permanent trauma resulting from the accident.
Dr. Weiss performed a CT scan on January 26, 1993. He found significant bulging and a possible rupture at L4-5 in Ms. Arnold’s lower back. Dr. Weiss recommended a myelogram, but Ms. Arnold could not afford the procedure at that time. Dr. Weiss stated that he could not confirm that Ms. Arnold’s injuries resulted from the August accident. Nevertheless, he stated that her condition was consistent with the history given to him by Ms. Arnold.
On February 8, 1994, a myelogram was performed by Dr. John Patton, a neurosurgeon in Alexandria, who stated that he found “quite a lot of pathology” in Ms. Arnold’s back. Dr. Patton felt that Ms. Arnold had a degenerative back condition that pre-dated the August accident, and that the August accident aggravated that condition. He stated that the August accident was at least a contributing cause of her symptoms.
■ All three doctors testified as to the extent of Ms. Arnold’s disability. They are in agreement that Ms. Arnold will be unable to work as a manual laborer. The ^doctors said that there was a possibility that Ms. Arnold could perform light, sedentary labor provided she was able to change positions frequently.
■There are three issues that need to be resolved: whether or not an accident occurred, whether that accident caused Ms. Arnold’s injuries, and whether Ms. Arnold is temporarily totally disabled as a result of her injuries. The first two issues must be proved by a preponderance of the evidence, while the third requires clear and convincing evidence.
WORK-RELATED ACCIDENT
The plaintiff in a compensation action has the burden of proving the existence of a work-related accident by a preponderance of the evidence. Trimble v. HADCO Services, Inc., 93-1465 (La.App. 3 Cir. 6/1/94); 640 So.2d 645. When the accident is witnessed only by the claimant, he or she may have difficulty in discharging the burden of proof. The recent case of Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992) established the following test for proving unwit-nessed accidents:
A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Bruno, 593 So.2d 357, at 361.
Corroboration of the worker’s testimony may be provided by medical evidence or by the testimony of workers, spouses, or friends. Id. Also, the trier of fact should accept the claimant’s uncontradicted testimony as true unless there is record evidence that causes suspicion or casts doubt on the reliability of the witness’s testimony. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Bruno v. Harbert International, Inc., 593 So.2d 357; Harrington v. Coastal Construction and Engineering, 94-1379 (La. App. 3 Cir. 4/5/95); 653 So.2d 779.
|6The manifest error standard applies to the review of the factual determinations made by a hearing officer in a worker’s compensation action. The findings of fact should be overturned only if “clearly wrong.” Alexander v. Pellerin Marble and Granite, 93-1698 (La. 1/14/94); 630 So.2d 706. Concerning the issue of unwitnessed accidents, in Bruno the Supreme Court emphasized the following language in explaining the manifest error/clearly wrong standard:
Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Bruno, 593 So.2d at *333 361 citing Rosell v. ESCO, 549 So.2d 840 (La.1989). (emphasis in original).
The record shows that Ms. Arnold’s story was internally consistent and plausible. Her version of the accident was not contradicted by any witness. We find the record supports that Ms. Arnold is a credible witness and that there was sufficient corroboration of her testimony to preclude us from finding manifest error.
Although the fact that she continued to work for several weeks following the accident is relevant as to the severity of the accident, it is much less relevant as to whether or not an accident took place. In Bruno, the Supreme Court stated that “a worker’s delay in reporting an injury ‘is more corroborative of her initial unawareness of the seriousness of the injury ... than it is any cause to doubt her credibility about its occurrence.’ ” Bruno, 593 So.2d 357 at 363; quoting West, 371 So.2d at 1150 (La.1979).
^Accordingly, we cannot say that the hearing officer was clearly wrong in crediting the testimony of Ms. Arnold in determining that a work-related accident had occurred.
CAUSATION
Recently, in Ceasar v. Crispy Cajun Restaurant, 94-30 (La.App. 3 Cir. 10/5/94); 643 So.2d 471, writ denied, 94-2736 (La. 1/6/95), 648 So.2d 931 we said the following with regard to causation:
In a workers’ compensation case, a claimant must prove by a preponderance of the evidence that a work-related accident occurred, and that her disability was caused by that employment accident. Doucet v. Baker Hughes Production Tools, 626 So.2d 948 (La.App. 3d Cir.), writ granted and aff'd with amendment, 93-3087 (La. 3/11/94); 635 So.2d 166. “A claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.” Bruno, 593 So.2d at 363 (citing West, 371 So.2d at 1149 and Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977)). “When there is proof of an accident and of a following disability, without an intervening cause, it is presumed that the accident caused the disability.” Coley v. Wilson Oil Co., Inc., 620 So.2d 445, 450 (La.App. 3d Cir.1993). Once a claimant proves an accident occurred followed by a disability, the burden shifts to the employer and his insurer to prove the absence of a causal connection between the accident and the injury. Bruno v. Guaranty Bank & Trust Co., 617 So.2d 1351 (La.App. 3d Cir.1993). Ceasar, 643 So.2d 471 at 476-477.
Ms. Arnold’s back condition became symptomatic with the work-related accident; it has manifested itself continuously since then. Her family and co-workers testified that she often complained of back pain following the August accident. They also testified that they saw her walking “hunched over” after the August accident. The medical findings indicate that the accident was at least a contributing factor to her disability.
IsDefendants assert that there are intervening causes of Ms. Arnold’s disability. First they claim that her disability was caused by her activities on the last day of work instead of the August 13 accident. While it is true that Ms. Arnold’s condition worsened considerably after her last day of work, Ms. Arnold has consistently attributed the onset of her injury to the August 13 accident. Her friends and co-workers stated that she had complained of back pain prior to the last day of work. Also, the medical evidence is consistent with a finding that the August accident contributed to Ms. Arnold’s disability. Although the nature of Ms. Arnold’s injury makes an exact determination of causation difficult, the hearing officer, was not manifestly erroneous in finding that the August 13 accident was the cause of Ms. Arnold’s disability.
The defendants also assert that the auto accident of December 19, 1992 was an intervening cause of Ms. Arnold’s injuries. All the medical evidence showed that although Ms. Arnold’s condition was temporarily ag *334 gravated by the accident, no permanent damage resulted from it. Moreover, the X rays taken before the auto accident show that her injury had already occurred by the time of the auto accident. The hearing officer was not clearly wrong in deciding that the automobile accident was not an intervening cause of Ms. Arnold’s disability.
DISABILITY
Compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence that he or she is physically unable to engage in any employment or self-employment. The employee must discharge this burden unaided by any presumption of disability. La.R.S. 23:1221.
Disability can be proved by both lay and medical testimony. The hearing officer should weigh all evidence, medical and lay, in order to determine whether or |9not the worker has met his burden. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980). Whether or not Ms. Arnold is temporarily totally disabled is a question of fact. The hearing officer’s findings on this issue should be given great weight, and should not be overturned on appeal unless clearly wrong. Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Johnson v. Ins. Co. of No. America, 454 So.2d 1113 (La.1984).
Ms. Arnold has a bulging disc at L4-5. She testified that she is in constant pain, and that her back occasionally “stoves up” for a several days at a time. She has not worked since Lou-Pac Express closed its Alexandria office. Prior to working at Lou-Pac, Ms. Arnold worked mainly as a manual laborer. She is a high school graduate and can read and write.
Dr. Weiss testified that although there was a possibility of Ms. Arnold performing light sedentary employment, he would discourage her from starting work at the present time. Dr. Patton stated that he was confident that Ms. Arnold could rejoin the work force after surgery, but that she should refrain from working until then. There was no testimony contradicting Drs. Weiss and Patton.
Based on our review of the record, we cannot say that the hearing officer was clearly wrong in finding that Ms. Arnold proved her temporary total disability by clear and convincing evidence.
For the foregoing reasons, the judgment of the hearing officer is affirmed. Costs of this appeal are assessed to appellants.
AFFIRMED.