673 So.2d 1357 (1996)
Samuel LUCIUS, Plaintiff-Appellant/Appellee,
v.
H.B. ZACHRY COMPANY, Defendant-Appellee/Appellant.
No. 95-1667.
Court of Appeal of Louisiana, Third Circuit.
May 8, 1996.
*1358 Randall Scott Iles, Lafayette, for Samuel Lucius.
Frank Meredith Walker, for H.B. Zachry Company.
Before YELVERTON, KNOLL and COOKS, JJ.
YELVERTON, Judge.
In this worker's compensation case, Samuel Lucius sued his former employer, H.B. Zachry Company (Zachry), and its compensation insurer, Insurance Company of North America, for injuries from exposure to fumes from coal tar epoxy. The Administrative Hearing Officer found that claimant's preexisting chronic obstructive pulmonary disease was aggravated by his exposure to coal tar epoxy, and his dermatitis was caused by his exposure to such irritants. She determined that both of these conditions were work-related but that neither rendered claimant *1359 disabled. Defendants were ordered to pay medical bills for treatment for the pulmonary disease and dermatitis through January 5, 1995 and January 23, 1995, respectively. The hearing officer denied indemnity benefits as well as penalties and attorney's fees.
Lucius appeals and contends that the hearing officer erred:
(1) in failing to award him temporary total disability benefits;
(2) by establishing an arbitrary cut off period for medical treatment associated with the injuries sustained in the accident;
(3) in failing to find that defendant's denial of medical and disability benefits was arbitrary and capricious and thus liable for penalties and attorney's fees.
Zachry and his insurer answered the appeal contending error in the finding that Lucius had suffered an accident or injury within the contemplation of those terms in the Louisiana Worker's Compensation Act.

FACTS
Lucius worked for Zachry as a welder in a papermill in Natchitoches Parish. He welded braces on a water clarifying tank coated with coal tar epoxy. Welding on the metal caused the coal tar epoxy to smolder and emit fumes. At trial, Lucius testified that after the first day of welding, his arms started burning, swelling, and breaking out. A report was filed with the company foreman on June 20, 1994. At this point, Lucius believed it was an allergic reaction to welding on galvanized metal. He continued welding on the assigned project, experiencing more skin irritation, along with difficulty breathing, dizziness, headaches, and shaking. On August 20, 1994, Lucius was laid off. At the time of the accident, he was 58 years old. Zachry and its insurer provided no medical treatment for his injuries.
Lucius' symptoms persisted. On September 19, 1994, he was treated by Dr. Leonard D. Shockey, his family physician at the Pineland Rural Health Clinic, for rashes on both arms and complaints of recurring headaches. He was given various medications. After several visits, Dr. Shockey recommended that he see a specialist. The medical records also show that Lucius had been treated previously at the same clinic for hypertension and impotency.
On December 13, 1994, Lucius saw a Lafayette occupational medicine specialist, Dr. Ray Boyer. He saw Dr. Boyer only once. According to this specialist's deposition, Lucius had a fairly extensive rash on his face and arms, and he was also short of breath. He noted that Lucius had smoked one to two packs of cigarettes a day for 30 to 40 years. Dr. Boyer ordered a pulmonary function test and referred him to two other specialists, Dr. Gary Guidry in pulmonary medicine, and Dr. Daniel Dupree in dermatology.
Lucius saw Dr. Guidry on December 21, 1994. Based on previous medical reports and the lung function test conducted in December of 1994, together with an earlier test done in June of 1993, Dr. Guidry found a decrease in lung function. Lucius was diagnosed as having chronic obstructive pulmonary disease. He opined that Lucius had this problem long before June of 1994 and that breathing fumes from the coal tar epoxy exacerbated this pulmonary disease. On January 4, 1995, a cardiopulmonary stress test was performed which revealed that Lucius had a moderate to severe exercise limitation. It was recommended that he quit smoking. Lucius was also given bronchodilators and anti-inflammatory medications. Lucius remained under Dr. Guidry's care until January 5, 1995.
Also on December 21, 1994, Lucius saw the dermatologist, Dr. Dupree. Extensive dry rashes were noted on both arms and the facial area, including the right side of the neck, which Lucius complained was itching and burning. Dr. Dupree diagnosed Lucius as having subacute to chronic dermatitis. Lucius was given soap recommendations and bathing instructions. He was also given topical ointments to apply to the affected areas and a shot of cortisone for inflammation. A skin biopsy confirmed Dr. Dupree's diagnosis.
Lucius saw Dr. Dupree again on January 4, 1995. His dermatitis was better and had begun to clear. However, Dr. Dupree noted an allergic reaction to an ointment (polysporin) *1360 used on the area where the skin biopsy was performed. An allergy patch test revealed that Lucius was allergic to neomycin sulfate, paraphenylene diamine, and mercapto mix. Several more visits followed during which more allergy patch tests were performed. Lucius was provided a list of products containing these substances which he was advised to avoid. In his deposition, Dr. Dupree opined that although Lucius' condition could have been caused by any of the above named substances, it was a reasonable possibility that his dermatitis was caused by his exposure to coal tar epoxy. Dr. Dupree last saw Lucius on January 23, 1995, during which he noted that the dermatitis had mostly cleared. Lucius was instructed to return on an as-needed basis.

ACCIDENT OR INJURY
Defendants argue that Lucius failed to prove that he suffered an "accident" or "injury" as defined by the Louisiana Worker's Compensation Act. The plaintiff in a compensation claim has the burden of proving a work-related accident by a preponderance of the evidence. Arnold v. Cavanaugh Aviation, 95-433 (La.App. 3 Cir. 10/4/95); 663 So.2d 329. La.R.S. 23:1021 of the Louisiana Worker's Compensation Act defines "accident" and "injury" as follows:
(1) `Accident' means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
* * * * * *
(7)(a) `Injury' and `personal injuries' include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.
Whether there was an accident is a finding of fact, and the appeal from such a finding is subject to the manifest error standard of review. Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992). We find that based on the record and the evidence adduced at trial, claimant has met this burden.
An employer takes his employee as he finds him and an employee's disability is compensable when a non-disabling preexisting condition is activated or precipitated into a disabling manifestation as a result of injury. Bradley v. Manville Forest Products, 616 So.2d 280 (La.App. 2 Cir.1993). The employee's workplace accident is presumed to have caused or aggravated his disability when he proves that: (1) before the accident, he had not manifested disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and (3) there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985). Once an employee establishes the presumption of a causal relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was not cause by the work accident. Id.
In the present case, Lucius testified that after welding on the water clarifier, he began to develop rashes on his arms and neck, experienced difficulty breathing and headaches. Lucius reported this and it was corroborated by the testimony of the project manager, Morgan. Morgan testified that he noticed no physical problems in terms of a rash or labored breathing when Lucius began work. He stated that Lucius was not given a pre-employment physical prior to being hired. A co-worker testified that Lucius complained of difficulty breathing and headaches after welding on the water clarifier. His wife testified that during this period he suffered the above ailments. Furthermore, the medical evidence adduced at trial attributed Lucius' condition to exposure to fumes from coal tar epoxy. Dr. Guidry opined that his preexisting pulmonary disease was exacerbated by his exposure to such fumes.
Defendants attempt to discredit Lucius by pointing to inconsistencies in his testimony *1361 regarding his work history and educational and medical background. However, these allegations have no bearing on the factual accounts and medical evidence supporting this case. The hearing officer did not commit error.

ENTITLEMENT TO TEMPORARY TOTAL DISABILITY BENEFITS
The hearing officer found that claimant was laid off from the job as a result of a reduction in force rather than because of any work-related disability. As such, claimant was not entitled to any indemnity benefits. We disagree. A claimant's entitlement to such benefits depends on whether he is disabled from injuries sustained while in the course and scope of employment. Pursuant to La.R.S. 23:1221(1)(c), Lucius had to prove by clear and convincing evidence, unaided by any presumption of disability, that he was physically unable to engage in any employment or self-employment in order to be entitled to temporary total disability benefits. Borel v. Dynamic Offshore Contractors, 94-1372 (La.App. 3 Cir. 4/5/95); 653 So.2d 115, writ denied, 95-1150 (La. 6/16/95); 655 So.2d 335.
The issue of disability within the framework of the worker's compensation law is a legal rather than a purely medical determination. Pollock v. Louisiana Ins. Guar. Ass'n, 587 So.2d 823 (La.App. 3 Cir.1991). This issue is determined with reference to the totality of the evidence, including both lay and medical testimony. Taylor v. Louisiana-Pacific Corp., 602 So.2d 48 (La.App. 3 Cir.), writ denied, 606 So.2d 541, 542 (La. 1992). "The trial court must weigh all the evidence, medical and lay, in order to determine if the plaintiff has met his burden. This factual finding should be given great weight and should not be overturned absent manifest error." Borel, 653 So.2d at 117-118, [citing Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993)].
In his deposition, Dr. Boyer opined that with the rash, Mr. Lucius could have returned to work doing something else besides welding, however, with discomfort. On the other hand, he stated that Lucius' chronic obstructive pulmonary disease alone would make him unfit to return to work as a welder. Dr. Guidry, the pulmonologist referred by Dr. Boyer, also stated that based on his observations, Lucius was unable to do his job. He stated that Lucius would require a pulmonary rehabilitation program to obtain maximal improvement. Dr. Dupree, the dermatologist, did not make any recommendations on whether Lucius should return to work or not. He opined that based on Lucius' last visit on January 23, 1995, he was capable of returning to work.
Defendants have offered no medical evidence to refute the findings made by these doctors. Under these circumstances, we find that Lucius proved by clear and convincing evidence that he was temporarily disabled until January 5, 1995, and it was manifest error not to award temporary total benefits from the date of his accident until January 5, 1995.
Accordingly, we find that Lucius is entitled to receive $323 a week from August 20, 1994, to January 5, 1995.

MEDICAL TREATMENT AND EXPENSES
The hearing officer ordered defendants to pay medical bills for treatment for the pulmonary disease and dermatitis through January 5, 1995 and January 23, 1995, respectively. According to the medical evidence these dates correspond to the last visit Lucius had with Drs. Guidry and Dupree.
Lucius claims that the hearing officer erred in terminating medical benefits as of the dates mentioned above. We agree. La. R.S. 23:1203 provides that the employer shall furnish all necessary medical treatment. See Benoit v. PET, Inc., 93-1019 (La.App. 3 Cir. 4/6/94); 635 So.2d 620, writ denied, 94-1168 (La. 6/24/94); 640 So.2d 1352.
In a letter documenting the course of treatment for dermatitis, Dr. Dupree noted that on January 23, 1995, Lucius' dermatitis had mostly cleared and instructed him to return on an as-needed basis. He made no opinion on whether further treatment was necessary. Lucius, in brief, mentions the *1362 continued need for medications associated with the dermatitis through the date of trial. However, the record is void of any such expenses incurred.
As to the pulmonary disease, Dr. Guidry testified in deposition that Lucius would require pulmonary rehabilitation to obtain maximum improvement. He explained that this rehabilitation program included physical and occupational therapy and could range from several weeks to several months. He opined that such a program would be reasonable and necessary to provide Lucius with optimal functioning.
Considering the prognosis made by Dr. Guidry, which is the only testimony in the record on that subject, it is clear that further medical treatment is necessary for claimant's pulmonary disease. The hearing officer was clearly wrong in denying continued treatment recommended by Dr. Guidry.

PENALTIES AND ATTORNEY'S FEES
The employer or insurer is liable for statutory penalties for withholding benefits without evidence to "reasonably controvert" the employee's right to compensation and medical benefits. La.R.S. 23:1201. Additionally, attorney's fees are recoverable if the employer or insurer acted arbitrarily, capriciously, or without probable cause in refusing to pay or terminating benefits. La. R.S. 23:1201.2. Bailey, 620 So.2d 277. An insurer or an employer is required to make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated or denied. Borel, 653 So.2d 115. The determination of whether an employer should be cast with penalties and attorney's fees is essentially a question of fact and the trial court's finding shall not be disturbed absent manifest error. Menard v. Winn Dixie Louisiana, Inc., 93-1497 (La.App. 3 Cir. 6/1/94); 640 So.2d 775.
In the present case, Lucius reported his injuries to a company representative on several occasions. Defendants took no actions to provide medical treatment or further investigate the cause of his injuries. Instead, he was laid off. The Material Safety Data Sheet for coal tar epoxy was provided to claimant only after repeated requests and after he was laid off. After the filing of the initial claim against defendants, several mediation conferences were scheduled which they failed to attend. The record is void of an adjuster's report or any evidence to controvert the claimant's suit or the medical evidence adduced at trial which attributes claimant's injuries to exposure to fumes from coal tar epoxy. Defendants have merely denied that a compensable accident or injury occurred without providing evidence for such contentions. An unjustified belief that an injury did not result from an "accident" does not excuse a failure to pay worker's compensation benefits. Nelson v. Roadway Exp., Inc., 588 So.2d 350 (La.1991).
We find that the hearing officer committed error in failing to award penalties and attorney's fees based on defendants' arbitrary and capricious denial of compensation and medical benefits. Penalties are awarded in the amount of 12% of the unpaid benefits. Attorney's fees are awarded in the amount of $7,500.

DECREE
For the reasons expressed in this opinion the judgment of the hearing officer finding that claimant suffered work-related injuries is affirmed.
In the remaining respects the judgment is reversed to award temporary total benefits in the amount of $323 a week from August 20, 1994 to January 5, 1995. A 12% penalty of this total amount is also awarded. Attorney's fees in the amount of $7,500 are awarded to the claimant. The judgment is also reversed to allow Lucius further medical treatment as Dr. Guidry recommends is necessary.
Additionally, Lucius is awarded all interest and costs in accordance with the law.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.