832 So.2d 1082 (2002)
Robert W. WARREN
v.
MADDOX HAULING.
No. 02-733.
Court of Appeal of Louisiana, Third Circuit.
December 4, 2002.
*1084 George A. Flournoy, Flournoy, Doggett & Losavio, Alexandria, Louisiana, for Plaintiff/Appellee, Robert W. Warren.
Michael W. Whitehead, Mandeville, Louisiana, for Defendant/Appellant, Maddox Hauling.
Court composed of HENRY L. YELVERTON, SLYVIA R. COOKS, and BILLIE COLOMBARO WOODARD, Judges.
WOODARD, Judge.
In this workers' compensation case, Maddox Hauling appeals the WCJ's decision to assess, against it, a total of $17,800.00 in penalties for untimely or non-payment of indemnity and medical benefits, $10,000.00 in attorney's fees, $250.00 for failure to provide a medical report, along with $750.00 in attorney's fees for obtaining the report, and for awarding Mr. Warren temporary total disability benefits. Mr. Warren answers and appeals the WCJ's denial of his request for La.R.S. 23:1208 sanctions and seeks attorney's fees for work done on the appeal. We affirm and grant additional attorney's fees for the appeal.

* * *
On May 24, 2000, Mr. and Mrs. Maddox, doing business as Maddox Hauling, hired Robert Warren as a truck driver. On Friday, May 26, 2000, a co-worker told him that he had a badly leaking wheel seal. Mr. Warren informed one of the Maddoxes. He was told to bring the truck to Courtney Equipment Truck and Trailer Center to have the leak repaired. While examining the truck, the mechanic found additional serious mechanical defects. Consequently, he refused to warranty the seal. The mechanic informed Mr. Warren that it was unsafe to drive the truck. Instead of authorizing the other repairs, the Maddoxes instructed Mr. Warren to return the truck to them.
The next afternoon, May 27, 2000a SaturdayMr. Warren did so. As he got out of the truck, a light strip underneath the cab popped out and snagged the top of his boot. He fell forward, twisted, and caught himself on the front fender. Pain ripped through his right knee. Mrs. Cheryl Warren, who had followed her husband to the Maddox yard, followed him into the Maddox home. Mr. Maddox, who was blind, asked her to write her husband's paycheck. Mr. Warren informed Mr. Maddox that he had twisted his knee getting out of the truck but did not believe that it warranted going to the emergency room; if it got worse, he would let him know. The Warrens left together.
Mrs. Maddox testified that Saturday afternoon, Mr. Maddox called her to tell her that Mr. Warren had told him that he twisted his ankle getting out of the truck. David Maddox testified that he observed Mr. Warren getting out of the truck and going into his parents' home; Mr. Warren did not appear to have fallen, nor did he limp into the house as he had testified. He also saw him leave. However, he did not see Mrs. Warren leave with her husband.
On May 28, 2000, Mr. Warren's pain intensified, necessitating emergency room treatment at the Winn Parish Medical Center. The emergency room staff gave him crutches and a knee immobilizer and instructed him to see an orthopedist. He notified Mr. Maddox that he would not be at work on Monday because of his knee injury and that he had to see a specialist. He testified that Mr. Maddox got upset and fired him. The date and circumstances of his termination are in dispute.
Mr. Warren filed suit on March 7, 2001. The WCJ heard arguments and found in his favor, awarding him temporary total disability benefits from the date of his injury, based on an average weekly wage *1085 of $575.00 per week, having a Worker's compensation rate of $383.30. The WCJ penalized Maddox Hauling $2,000.00 for late indemnity payments for each month from May through August 2001, as well as an additional $1,800.00 for failing to timely commence payment. He assessed Maddox Hauling $2,000.00 in fines for untimely payment of a Louisiana Physical Therapy bill; $2,000.00 for CENLA imaging bills which were not paid; $2,000.00 for failure to authorize pain management; and $2,000.00 for failure to authorize a third surgery. The judgment, also, ordered Maddox Hauling to pay for a third knee surgery, if needed. Moreover, the WCJ assessed a $250.00 penalty against Maddox Hauling, along with $750.00 in attorney's fees, for failure to timely forward a medical report. Lastly, the judge awarded $5,000.00 in attorney's fees to Mr. Warren's attorney for work done in securing indemnity benefits and an additional $5,000.00 in attorney's fees for securing medical benefits. He awarded legal interest on the indemnity benefits from their due date and legal interest on the medical benefits, penalties, and attorney's fees from the date of the judgment's signing. The WCJ found no fraud on either side. Essentially, except for the fraud issue, the WCJ found Mr. Warren's version of the facts to be more credible than his opposition.
Both parties appeal.
STANDARD OF REVIEW
Appellate courts review a WCJ's decision to determine the reasonableness of the conclusions.[1] Louisiana jurisprudence has a strong presumption that an appellate court may not set aside a WCJ's findings of fact in the absence of manifest or clear error, even if we disagree with the WCJ's factual findings and conclusions.[2]
UNTIMELY OR NON-PAYMENT OF INDEMNITY BENEFITS UNDER LA.R.S. 23:1201
Maddox Hauling asserts that the WCJ erred in assessing $9,800.00, in penalties, for failure to timely pay and non-payment of indemnity benefits. Whether an employee may be awarded penalties and attorney's fees is a question of fact which we will not disturb on appeal absent a finding of manifest error.[3]
In accordance with La.R.S. 23:1201, the WCJ awarded a $1,800.00 penalty for failure to timely commence payment of indemnity benefits. In addition, he assessed Maddox Hauling with a $2,000.00 penalty for each month that it failed to pay Mr. Warren benefits. Maddox Hauling began paying indemnity benefits on June 17, 2001; however, the first payment was due on the fourteenth day after the injury, June 10, 2001.[4] Also, the March 9, 2001 payment was not paid until March 22, 2001, as was the case with the March 16, 2001 payment. Moreover, the July 8, 2001 payment was not paid until after July 22, 2001. Thus, the WCJ used La.R.S. 23:1201(F) to calculate his award for these untimely or not paid benefits.
La.R.S. 23:1201(F) provides, in pertinent part:
Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical *1086 benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
After reviewing the record in its entirety, we cannot say that the WCJ committed manifest error in awarding these penalties, as La.R.S. 23:1201 provides that the employer or insurer is liable for statutory penalties for withholding benefits without evidence to "reasonably controvert" the employee's right to compensation and medical benefits.[5] Additionally, in Brown v. Texas-LA. Cartage, Inc.,[6] our supreme court indicated that the employer must have some valid reasons or evidence upon which to base its denial of benefits in order to reasonably controvert a claim. It stated:
Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Furthermore, in our previous decision, Haynes v. Williams Fence & Aluminum,[7] we affirmed the award of multiple penalties for the untimeliness or non-payment of indemnity benefits. Therefore, in the instant case, we see no manifest error in the WCJ's finding that Maddox Hauling failed to reasonably controvert Mr. Warren's claims and in his award of multiple penalties.
UNTIMELY OR NON-PAYMENT OF MEDICAL BENEFITS
Maddox Hauling, also, contests the WCJ's award of $8,000.00 for its failure to timely pay medical benefits and to authorize treatment. Initially, Maddox Hauling paid for Mr. Warren's medical expenses and two unsuccessful knee surgeries, which failed to alleviate his pain. It, also, paid for his visits to Dr. Rambach. Nonetheless, it refused to authorize the third surgery which Dr. Rambach deemed necessary. Furthermore, on March 8, 2001, Mr. Warren submitted the Louisiana Physical Therapy bill to Concepts Claims. It remained unpaid until July 14, 2001. Additionally, he submitted bills on May 3, 2001 and, again, on August 22, 2001, for the reading of two MRIs from CENLA Imaging. Maddox Hauling failed to pay both bills. Moreover, Maddox Hauling failed to pay the Cabrini emergency room bill submitted on August 22, 2001.
When an employer refuses to authorize medical treatment which is reasonable and necessary, penalties and fees are warranted.[8] Dr. Rambach, Mr. Warren's treating orthopedist, recommended that he undergo a third surgery, which Maddox Hauling denied. An employer may escape liability for its failure to provide medical benefits if: 1) its nonpayment stemmed from conditions over which the employer had no control, or 2) the employer reasonably controverted the employee's right to *1087 such medical benefits.[9] We find no manifest error in the WCJ's conclusion that Maddox Hauling offered no reasonable explanation for its denial and failed to reasonably controvert Mr. Warren's claim.[10]
We affirm the WCJ's ruling in accordance with Haynes.
MEDICAL REPORTS
Under La.R.S. 23:1125, Maddox Hauling had an obligation to provide Mr. Warren with a copy of its written medical report within thirty days after his request. We find no manifest error in the WCJ's determination that it failed to do so without just cause and his assessment of a penalty of $250.00, as well as $750.00 in attorney's fees against Maddox Hauling.
ATTORNEY'S FEES
La.R.S. 23:1201's attorney's fees provisions are penal in nature. Therefore, we must strictly construe them.[11] They are intended to discourage indifference and undesirable conduct by employers and insurers.[12]
The determination of whether an employer should be cast with attorney's fees in a workers' compensation case is essentially a question of fact. We shall not disturb a WCJ's finding absent manifest error.[13] Based on the WCJ's determinations for which there was no manifest error, we affirm his award of attorney's fees.
Additionally, a workers' compensation claimant is entitled to an increase in attorney's fees for time incurred in defending an employer's unsuccessful appeal.[14] We grant Mr. Warren's request for attorney's fees for this appeal and award him $5,000.00.
SUPPLEMENTAL EARNINGS AND TEMPORARY TOTAL DISABILITY BENEFITS
On April 20, 2001, Mr. Gary Kern, a claims' manager with Concepts Claims, informed Mr. Warren's counsel that it had converted Mr. Warren's benefit status from TTDs to SEBs. By letter, Mr. Kern requested that Mr. Warren complete a 1020, covering May 27, 2000 through April 18, 2001; after receipt, it would issue him an SEB check within fourteen days. Notwithstanding, Maddox Hauling terminated all benefits on September 22, 2001, because of the decision that an accident did not occur.
After he was no longer receiving benefits, Mr. Warren tried to work for a brief time but was unable to do so because of the incessant and extreme knee pain. Logically, he would have only been entitled to SEBs. Dr. Drury, his first orthopedic surgeon, supported Mr. Warren's version of events. He admitted that even after two surgeries, Mr. Warren was still having considerable pain and difficulty. Furthermore, when Dr. Drury last saw Mr. Warren on March 16, 2001, he was unable to return to work. Also, Dr. Rambach described his disability as "a great deal of difficulty with pain and discomfort in his right knee, knee locking on him, causing more pain and discomfort, unable to stand for even short periods of time without experiencing pain, cannot do any bending, squatting or stooping because of pain." In *1088 his opinion, Mr. Warren needed "arthroscopic surgery in order to perform another extensive lateral release as well as a condroplasty of the patella, removal of any synovial plicae and excision of the torn portion of the posterior horn of the medial meniscus." Only after this surgery would Mr. Warren finally reach a point in which he could be rehabilitated to return to gainful employment.
The WCJ concluded that Mr. Warren was entitled to TTDs from the date of his injury until a "reasonably reliable determination of the extent of his disability can be made, subject to a credit for any and all payments of disability benefits previously made by defendant." The WCJ had a reasonable basis for this finding. Thus, finding no manifest error, we affirm his award of TTDs.
LA.R.S. 23:1208 SANCTIONS AGAINST DEFENDANTS
Mr. Warren has appealed the WCJ's denial of these sanctions because he believes that the Maddoxes made wilful misrepresentations concerning the events surrounding his accident and termination, and thus, are subject to La.R.S. 23:1208(C)'s penalty provisions. Contrarily, the WCJ found that the Maddoxes had not made wilful misrepresentations but had merely had lapses of memory. His finding involved a credibility determination, which we will not upset absent manifest error. Finding none, we reiterate that the decision to grant sanctions is necessarily based upon the WCJ's findings of fact regarding a party's conduct.[15] Since the trial court found no fraud, the Maddoxes were not subject to La.R.S. 23:1208's sanctions. We affirm this part of his ruling, as well.

CONCLUSION
Mr. Robert Warren worked for his employer for a short time before injuring himself. Mr. Warren filed suit after his employer fired him. The WCJ found that Mr. Maddox fired Mr. Warren after he reported to him that he had injured himself while getting out of the Maddox truck.
The WCJ ruled in Mr. Warren's favor and assessed a $9,800.00 penalty against Maddox Hauling and $5,000.00 in attorney's fees for multiple untimely and/or non-payments of indemnity benefits, as well as an $8,000.00 for penalties and $5,000.00 in attorney's fees for the multiple untimely and/or nonpayment of medical benefits. Moreover, the WCJ awarded $250.00 in penalties and $750.00 in attorney's fees for a failure to timely provide a medical report. Lastly, the WCJ awarded TTDs until a determination could be made regarding the extent of Mr. Warren's disability.
The WCJ denied Mr. Warren's request for sanctions under La.R.S. 12:1208.
After reviewing the record and finding no manifest error, we affirm the WCJ's ruling, in its entirety, and award an additional $5,000.00 in attorney's fees for work done on this appeal. We assess all costs to Maddox Hauling.
AFFIRMED.
NOTES
[1] Stobart v. State through Dep't of Transp. & Dev., 617 So.2d 880 (La. 1993).
[2] Rosell v. ESCO, 549 So.2d 840 (La. 1989).
[3] Fontenot v. J.K. Richard Trucking, 97-220 (La.App. 3 Cir. 6/4/97); 696 So.2d 176.
[4] La.R.S. 23:1201(B).
[5] Lucius v. H.B. Zachry Co., 95-1667 (La.App. 3 Cir. 5/8/96); 673 So.2d 1357, writ denied, 96-1483 (La.9/20/96); 679 So.2d 438.
[6] 98-1063, p. 9 (La.12/1/98); 721 So.2d 885, 890.
[7] 01-26 (La.App. 3 Cir. 1/9/02); 805 So.2d 233, writ granted, 02-478, 813 So.2d 1096 (La.4/26/02).
[8] Brasseaux v. Abbeville Gen. Hosp., 97-1062 (La.App. 3 Cir. 3/18/98); 710 So.2d 340 writ denied in part, judgment reversed in part, 98-1066 (La.6/5/98); 720 So.2d 673, 692.
[9] La.R.S. 23:1201(F)(2).
[10] Nelson v. Roadway Exp., Inc., 588 So.2d 350 (La. 1991).
[11] Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99); 737 So.2d 41.
[12] Sharbono v. Steve Lang & Son Loggers, 97-110 (La.7/1/97); 696 So.2d 1382.
[13] Foster v. Liberty Rice Mill, 96-438 (La.App. 3 Cir. 12/11/96); 690 So.2d 792.
[14] Hickman v. Allstate Timber Co., 94-1275 (La.App. 3 Cir. 4/5/95); 653 So.2d 154, writ denied, 95-1133 (La.6/23/95); 656 So.2d 1017.
[15] Boise Cascade Corp. v. Dean, 99-1356 (La. App. 3 Cir. 5/3/00); 767 So.2d 76, writ denied, 00-2505 (La. 11/13/00); 774 So.2d 146.