STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-617

DAMON W. RYAN

VERSUS

CAJUN INDUSTRIES, L.L.C.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 18-06799
CHARLOTTE L. BUSHNELL, WORKERS COMPENSATION JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of John E. Conery, D. Kent Savoie, and J. Larry Vidrine*, Judges.

AFFIRMED.

_____

* Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Mark Zimmerman**
**Attorney at Law**
**949 Ryan Street, Suite 110**
**Lake Charles, Louisiana 70601**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **Damon W. Ryan**

**Phillip Edward Foco**
**Colin P. O'Rourke**
**Bienvenu, Bonnecoze, Foco, Viator & Holinga, APLLC**
**4210 Bluebonnet Boulevard**
**Baton Rouge, Louisiana 70809**
**(225) 388-5600**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Cajun Industries, L.L.C.**

**SAVOIE, Judge.**

In this workers' compensation matter, Defendant/Employer Cajun Industries, L.L.C. (Cajun Industries) appeals the judgment of the Office of Workers' Compensation (OWC) rendered in favor of Plaintiff/Claimant Damon W. Ryan. Cajun Industries now appeals.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

In written reasons, the Workers' Compensation Judge (WCJ) set forth the following facts:

> On or about August 28, 2018, while [Damon Ryan] was working with a backpack cement vibrator, he was hit by a large cement chute or large metal trough with rounded bottoms and open ends used for conveying concrete to a lower elevation.  The chute hit [Damon Ryan] while cement poured on to [Damon Ryan] from the chute.  The accident was witnessed by the operator of the pump truck, Zach Sonnier.  Sonnier recalls hitting [Damon Ryan] with the chute. Initially, startled, [Damon Ryan] worked light duty and progressively ached and became stiff.  Ultimately, on September 8, 2018, [Damon Ryan] could no longer work.  He reported the acute pain to his supervisor who took him to Prime [Occupational Medicine] for treatment. [Damon Ryan] experienced neck, shoulder, and back pain.

The parties' agree that his employment was terminated due to a reduction of force.  Since Mr. Ryan's termination, Cajun Industries paid for his medical benefits; however, they did not pay him indemnity benefits.  Mr. Ryan had a cervical and right shoulder MRI performed on September 18, 2018.  He was evaluated by Dr. Brett Cascio, an orthopedic surgeon, who recommended physical therapy for a right shoulder strain.  For the pain in his back, Mr. Ryan was referred to Dr. Seth Billodeaux, a physiatrist, and also to Dr. Clark Gunderson, an orthopedic surgeon.  Dr. Gunderson recommended physical therapy.  Dr. Billodeaux ordered cervical and lumbar physical therapy and a lumber MRI.  Dr.

Billodeaux also prescribed steroid injections.  Mr. Ryan was restricted to "no duty" in October 2018.

Damon Ryan filed a Disputed Claim for Compensation on October 9, 2018. Trial on the merits was held December 9, 2019.  The WCJ found that "[Damon Ryan] suffered a compensable work accident to his right shoulder, neck, and back on or about August 28, 2018, while in the course and scope of his employment with [Cajun Industries]."  The WCJ ordered Temporary Total Disability (TTD) Benefits in the amount of $653.00 per week from September 9, 2018, until August 2, 2019, based on the stipulated average weekly wage (AWW) of $1,188.45.  The WCJ also ordered Supplemental Earnings Benefits (SEB) from August 2, 2019, paid monthly at $2,075.63 or $479.00 per week.  The WCJ found that Damon Ryan was entitled to reasonable and necessary medical benefits resulting from his workplace injury.  Cajun Industries' defenses based on La.R.S. 23:1208 and 1208.1 were denied.  The WCJ awarded Damon Ryan penalties in the amount of $2,000.00, attorney's fees in the amount of $6,500.00, and $665.45 in litigation expenses, along with court costs.

Cajun Industries filed this appeal, alleging the following assignments of error:

1. The [WCJ] committed manifest error and the decision was clearly wrong as the [WCJ] relied on findings of fact contradicted by [Damon Ryan's] sworn testimony to find that [Damon Ryan] met his burden of proving that he was injured as a result of the August 28, 2018 incident.

2. The [WCJ] committed manifest error and the decision was clearly wrong in awarding supplemental earnings benefits where [Damon Ryan] did not meet his burden of proof to show that the wage loss associated with his current employment was a result of his alleged workplace injury.

3. The [WCJ] committed manifest error and the decision was clearly wrong in awarding [Damon Ryan] penalties and attorney fees, as Cajun [Industries] reasonably controverted the claims asserted by [Damon Ryan].

Damon Ryan answered the appeal, requesting additional attorney's fees for work done on appeal.

## LAW AND DISCUSSION

### I. Standard of Review

The manifest error standard of review is the correct standard to be applied by the appellate court in workers' compensation cases. *Dean v. Southmark Construction*, 03-1051 (La 7/6/04), 879 112. Thus, the WCJ's findings will not be set aside absent a showing that they are clearly wrong. *Alexander v. Pellerin Marble & Granite*, 93-1698 (La 1/14/94), 630 So.2d 706. "The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Blake v. Turner Industries Group, LLC*, 12-140, p. 6 (La.App. 1 Cir. 9/21/12), 111 So.3d 21, 25.

### II. Findings of the WCJ

In a workers' compensation case, a claimant must prove by a preponderance of the evidence that an accident occurred in the course and scope of his employment, that he sustained an injury as a result of the workplace accident, and that the injury caused his disability. *Jones v. Progressive Baptist Church of Louisiana*, 20-314 (La.App. 3 Cir. 3/3/21), 315 So 3d. 942. In the present case, the WCJ found:

> Initially, startled, [Damon Ryan] worked light duty and progressively ached and became stiff. Ultimately, on September 8, 2018, [Damon Ryan] could no longer work. He reported the acute pain to his

3

supervisor who took him to Prime Medical for treatment. [Damon Ryan] experienced neck, shoulder, and back pain.

Notwithstanding [Damon Ryan's] prior medical issues, the current medical records support [Damon Ryan's] testimony. Specifically, Dr. Brett Cascio assessed injury of muscle, fascia, and tendon at shoulder and upper arm level, strain of muscles and tendon of the rotator cuff of right shoulder. Dr. Cascio referred [Damon Ryan] to Dr. Billiodeaux, then Dr. Billiodeaux referred [Damon Ryan] to Dr. Gunderson. On October 25, 2018, Dr. Gunderson indicated claimant was unable to return to work.

Cajun Industries complains that the WCJ's findings of fact are contradicted by the record. Specifically, Defendant finds fault with the WCJ's statement that "[Damon Ryan] worked light duty and progressively ached and became stiff. Ultimately on September 8, 2018, [Damon Ryan] could no longer work." Cajun Industries relies on Damon Ryan's trial testimony. At trial, Mr. Ryan testified that he didn't feel pain until the morning of September 8, 2018. Yet, in a written statement on September 8, 2018, he stated that he began hurting later on the day of the accident. The Prime Medical records of September 8, 2018, indicate that Mr. Ryan started to feel pain three days prior.

In deciding whether the claimant has discharged her burden of proof, the fact-finder "should accept as true a witness's uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of the testimony." *Bruno v. Harbert Int'l, Inc.,* 593 So.2d 357, 361 (La.1992). **Where, however, there is contradictory testimony, the fact-finder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal.** *Merrill,* 10–0834 at pp. 6–7; 70 So.3d at 995.

*Dow v. Chalmette Restaurant, Ltd.,* 15-336, p. 17 (La.App. 4 Cir. 5/18/16), 193 So.3d 1222, 1232 (emphasis added).

The WCJ found that the medical records supported Mr. Ryan's claims. The WCJ stated:

4

Specifically, Dr. Brett Cascio assessed injury of muscle, fascia, and tendon at shoulder and upper arm level, strain of muscles and tendon of the rotator cuff of right shoulder. Dr. Cascio referred [Damon Ryan] to Dr. Billiodeaux, then Dr. Billiodeaux referred [Damon Ryan] to Dr. Gunderson. On October 25, 2018, Dr. Gunderson indicated [Damon Ryan] was unable to return to work.

In medical records dated October 11, 2018, Dr. Cascio assessed Mr. Ryan's injury as an "[i]njury of muscle, fascia and tendon at shoulder and upper arm level; [s]train of muscle(s) and tendon(s) of the rotator cuff of right shoulder." Dr. Cascio recommended "[n]o work until further notice." Mr. Ryan saw Dr. Gunderson on October 25, 2018, and he recommended physical therapy. Dr. Gunderson also recommended that Mr. Ryan not work. Mr. Ryan saw Dr. Billiodeaux for the first time on November 7, 2018, at which time Dr. Billiodeaux recommended cervical and lumbar physical therapy and also administered steroid injections. Dr. Billiodeaux last saw Damon Ryan on May 28, 2019, noting that he had made no improvement.

Cajun Industries argues that Mr. Ryan's injuries could not be a result of the workplace accident because he continued to work, without complaint, for ten days post-accident before reporting the injury to his supervisor.

When Dr. Billiodeaux was asked about the onset of pain after an accident, he testified in his deposition that he would feel comfortable relating symptoms to an injury such as the one suffered by Mr. Ryan up to four weeks post-accident. He stated, "[I]n my experience, up to four weeks patients [may be] barely asymptomatic, but realizing their injuries up to four weeks after an injury."

Next, Cajun Industries insists that Mr. Ryan's injuries were caused by a pre-existing degenerative condition and not the workplace accident. The WCJ found that, while Mr. Ryan was involved in prior accidents, he had worked as a laborer at

5

Cajun Industries for approximately one year before the accident occurred without issues.

> It is recognized that in a case involving a pre-existing condition, the employee is aided by a presumption regarding causation specifically where an employee proves that before that accident he had not manifested disability symptoms, but that commencing with the accident, the disability symptoms appeared and manifested themselves and the medical or circumstantial evidence indicates a reasonable possibility of a causal connection between the accident and the activation of the disabling condition.

*Broadway v. Shane Mitchell Logging, Inc.*, 12-810, p. 6 (La.App. 3 Cir. 12/12/12), 105 So.3d 1041, 1046.

Damon Ryan was involved in a previous work-related accident when he fell off of a ladder and suffered neck and back injuries. Dr. Gunderson treated Mr. Ryan from June 26, 2012, to October 2, 2012, at which time Dr. Gunderson released Mr. Ryan to regular duty without restrictions. Mr. Ryan testified that, since then, he has worked in hard labor jobs without restrictions until this accident.

It is undisputed that Mr. Ryan was involved in a workplace accident on August 28, 2018. While there are differing accounts from Mr. Ryan regarding the onset of pain, it is clear that by September 8, 2018, his pain was so acute that he could not work, contacted his supervisory, and was sent to Prime Medical. This is well within the four-week timeframe for onset of symptoms relating back to an accident to which Dr. Billiodeaux testified. Mr. Ryan did not suffer from pain prior to the accident, his pain appeared post-accident within the time period for onset of symptoms, and the medical evidence indicates a reasonable possibility of a causal connection between the workplace accident and the onset of Mr. Ryan's injuries. Therefore, we find that Mr. Ryan is aided by a presumption of causation. We further find that the WCJ was not manifestly erroneous in her findings of fact

or in finding that Mr. Ryan proved by a preponderance of the evidence that the workplace accident caused his injury which resulted in his disability. This assignment of error has no merit.

   *III.    SEBs*

The WCJ ordered SEBs from August 2, 2019, paid monthly at $2,075.63 or $479.00 per week. Cajun Industries argues there is no evidence in the record that establishes that Damon Ryan is entitled to SEBs after July 24, 2019. Damon Ryan began working at the Hampton Inn on July 24, 2019. He earned $10 per hour in that position. Cajun Industries points out that there is no evidence in the record that Mr. Ryan was under any work restrictions imposed by his physicians in July 2019.

This court in *Evans v. Winn Lumber Company, LLC*, 20-28, p. 2 (La.App. 3 Cir. 10/28/20), 306 So.3d 525, 527, explained:

> The purpose of SEBs is to compensate an injured employee for the wage-earning capacity lost as a result of a work-related accident." *Lacaze v. Alliance Compressors*, 03-1566, p. 4 (La.App. 3 Cir. 4/14/04), 870 So.2d 1150, 1154 (citing *City of Jennings v. Dequeant*, 96-943 (La.App. 3 Cir. 11/5/97), 704 So.2d 264, *writ denied*, 98-610 (La. 4/24/98), 717 So.2d 1174). Initially, "[t]he injured employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his or her inability to earn [90% or more of the average pre-injury wage] under the facts and circumstances of the individual case." *Freeman v. Poulan/Weed Eater*, 93-1530 (La. 1/14/94), 630 So.2d 733, 739. On review, an appellate court must not re-weigh evidence or to substitute its own factual findings just because it may have decided a case differently. *Bonin v. Ferrellgas, Inc.*, 03-3024 (La. 7/2/04), 877 So.2d 89.

The record indicates that Mr. Ryan was examined by Dr. Cascio on October 11, 2018, at which time Dr. Cascio restricted him to no work. Similarly, on October 25, 2018, Dr. Gunderson examined Mr. Ryan and also determined that he was not able to work. For the next few months, Mr. Ryan treated with Dr.

7

Billiodeaux.  On May 28, 2019, two months before Mr. Ryan began working at the Hampton Inn, Dr. Billiodeaux noted that Mr. Ryan had made no improvement.

The record further shows that Mr. Ryan did not finish the tenth grade.  When Mr. Ryan was in school, he was in special education.  He has been a laborer his entire life.  Because of the pain caused by his injury, he is no longer able to work as a laborer.  In finding Mr. Ryan is entitled to SEBs, it is clear that the WCJ accepted his testimony as to his physical ability, or lack thereof, as well as the medical findings, which corroborated Mr. Ryan's claim that he is entitled to SEBs due to his inability to earn ninety percent or more of his average pre-injury wage.  As such, we find no manifest error in the WCJ's award of SEBs to Mr. Ryan.

*IV.*    *Penalties and Attorney's Fees*

In Oral Reasons, the WCJ found that Damon Ryan is "entitled to a penalty of $2,000 for [Cajun Industries'] failure to pay indemnity benefits and $6,500 for attorney's fees for prosecution of the claim."  Initially, Cajun Industries argues that the WCJ failed to provide any indication of the legal standard she used in awarding penalties and attorney's fees.  Therefore, they contend that this warrants a *de novo* review of the record.  However, in the final judgment, the WCJ stated that "[t]he present claim for indemnity benefits has not been reasonably controverted, entitling [Damon Ryan] to" penalties and attorney's fees.

Pursuant to La.R.S. 23:1201(F), a court has the authority to award penalties and attorney's fees when a claim has been denied, unless the claim has been reasonably controverted.  The WCJ in this case found that the case was not reasonably controverted and awarded penalties and attorney's fees.  Therefore, we find that the WCJ did use the correct legal standard, and we are to review the

8

record under a manifestly erroneous standard. See *Martin v. Doerle Food Services, LLC*, 21-94 (La.App. 3 Cir. 6/2/21), 321 So.3d 475.

The WCJ "has great discretion in the award of penalties and attorney fees, and [its'] decision will not be disturbed unless it is clearly wrong." *Gray v. Premier Staffing*, 99-197, p. 7 (La.App. 3 Cir. 6/2/99), 736 So.2d 340, 344. "To reasonably controvert a claim, an employer must be 'engaged in a nonfrivolous legal dispute or [possess] factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.'" *Ortega v. Cantu Services, Inc.*, 19-202, p. 8 (La. App. 3 Cir. 10/23/19), 283 So.3d 1024, 1031 (quoting *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890).

In *Pete v. Quality Const. Specialists and Bridgefield Cas. Ins. Co.*, 09-642, pp. 7-8 (La. App. 3 Cir. 12/9/09), 25 So.3d 241, 245, *writ denied*, 10-41 (La. 3/12/10), 28 So.3d 1029, this court explained:

> The employer or insurer has a continuing duty to investigate the employee's claim and to assess factual information before the denial of benefits. *Penn v. Wal-Mart Stores, Inc.*, 93-1262 (La.App. 3 Cir. 6/15/94), 638 So.2d 1123, *writ denied*, 94-1835 (La.10/28/94), 644 So.2d 651. Thus, a failure to investigate the employee's claim subjects the employer or insurer to penalties and attorney fees. *McClendon v. Keith Hutchinson Logging*, 96-2373 (La.App. 1 Cir. 11/7/97), 702 So.2d 1164, *writ denied*, 97-2872 (La.2/13/98), 706 So.2d 995. Moreover, "a workers' compensation claimant is entitled to an increase in attorney fees for time incurred in defending an employer's unsuccessful appeal." *Warren v. Maddox Hauling*, 02-733, p. 6 (La.App. 3 Cir. 12/4/02), 832 So.2d 1082, 1087, *writ denied*, 03-4 (La.4/21/03), 841 So.2d 791.

Based on the record, we cannot say that the WCJ was manifestly erroneous in awarding penalties and attorney's fees in this case. The workplace accident is undisputed. The medical records show that Mr. Ryan was injured, and two

9

separate doctors determined that he was unable to work as a result. There is no evidence that Cajun Industries continued to investigate Mr. Ryan's claim. For these reasons, this assignment has no merit.

In his Answer to Appeal, Damon Ryan requests an increase in the attorney's fees awarded by the WCJ from $6,500.00 to $15,000.00.

> "[A]s long as an award for attorney fees is supported by the record, the amount of the award is within the discretion of the [workers' compensation judge]." *Burns v. St. Frances Cabrini Hosp.,* 02-518, p. 5 (La.App. 3 Cir. 10/30/02), 830 So.2d 572, 576 (citing *McCarroll v. Airport Shuttle, Inc.,* 00-1123 (La.11/28/00), 773 So.2d 694). "Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case." *Ardoin v. Kipling Korner Grocery,* 02-1372, pp. 2-3 (La.App. 3 Cir. 3/5/03), 839 So.2d 1167, 1168-69 (*quoting McCarroll,* 773 So.2d at 700).

*Glaze v. Wal-Mart Stores, Inc.*, 05-72, p. 3 (La.App. 3 Cir. 6/1/05), 904 So.2d 944, 946, *writ denied*, 05-1734 (La. 5/5/06), 928 So.2d 540.

We find the award is supported by the record; therefore, we refuse to disturb the award on appeal. However, Damon Ryan also requests additional attorney's fees for work done on appeal. "It is well-established that a workers' compensation claimant who is successful in defending an appeal may be entitled to an award of additional attorney fees." *McCain v. Motel 6*, 19-653, p. 11 (La.App. 3 Cir. 3/4/20), 297 So.3d 136, 143, *writ denied*, 20-764 (La. 10/6/20), 302 So.3d 535. Damon Ryan answered the appeal, requesting attorney's fees for work done on appeal, and he was successful in defending the appeal. As such, we award Damon Ryan $5,000.00 in attorney's fees for work done on appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the WCJ is affirmed. Damon Ryan is awarded $5000.00 in attorney's fees for work done on appeal. Costs of this appeal are assessed against Cajun Industries, LLC.

**AFFIRMED.**